BOWEN, SECRETARY OF HEALTH AND HUMAN
SERVICES, ET AL. v. CITY OF NEW YORK ET AL.

No. 84–1923.   Argued February 26, 1986—Decided June 2, 1986

POWELL, J., delivered the opinion for a unanimous Court.

*Edwin S. Kneedler* argued the cause for petitioners. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Geller, William Kanter,* and *Howard S. Scher.*

*Frederick A. O. Schwarz, Jr.,* argued the cause for respondents. With him on the brief were *Frederick P. Schaffer, Michael D. Young, Robert Abrams,* Attorney General of New York, *Robert Hermann,* Solicitor General, *Paul M. Glickman* and *Andrea Green,* Assistant Attorneys General, *Leonard S. Rubenstein, Ambrose Doskow,* and *Richard L. Claman.**

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Alabama et al. by *Neil F. Hartigan,* Attorney General of Illinois, *Roma J. Stewart,* Solicitor General, *Charles A. Graddick,* Attorney General of Alabama, *Steve Clark,* Attorney General of Arkansas, *Jim Smith,* Attorney General of Florida, *Corinne K. A. Watanabe,* Attorney General

JUSTICE POWELL delivered the opinion of the Court.

This class action was brought pursuant to 42 U. S. C. § 405(g) challenging an internal policy of the Secretary of Health and Human Services that had the effect of denying disability benefits to numerous claimants who may have been entitled to them. The issues presented are whether the District Court correctly included within the class (i) claimants who had received a final decision on their individual claims for benefits more than 60 days prior to the filing of this action, and (ii) other claimants who had not exhausted their administrative remedies.

I

The Federal Government provides benefits to disabled persons under two distinct programs administered by the Social Security Administration (SSA). The Social Security

of Hawaii, *Thomas J. Miller*, Attorney General of Iowa, *David L. Armstrong*, Attorney General of Kentucky, *William J. Guste, Jr.*, Attorney General of Louisiana, *James E. Tierney*, Attorney General of Maine, *Stephen H. Sachs*, Attorney General of Maryland, *Hubert H. Humphrey III*, Attorney General of Minnesota, *Vicki Sleeper*, Special Assistant Attorney General, *Edward Lloyd Pittman*, Attorney General of Mississippi, *William L. Webster*, Attorney General of Missouri, *Robert M. Spire*, Attorney General of Nebraska, *Brian McKay*, Attorney General of Nevada, *W. Cary Edwards*, Attorney General of New Jersey, *Paul Bardacke*, Attorney General of New Mexico, *Nicholas Spaeth*, Attorney General of North Dakota, *Michael C. Turpen*, Attorney General of Oklahoma, *Mark V. Meierhenry*, Attorney General of South Dakota, *Jim Mattox*, Attorney General of Texas, *Charles G. Brown*, Attorney General of West Virginia, *Bronson C. La Follette*, Attorney General of Wisconsin, and *A. G. McClintock*, Attorney General of Wyoming; for the City of Chicago by *James D. Montgomery;* for the American Bar Association by *William W. Falsgraf* and *John H. Pickering;* for the American Civil Liberties Union et al. by *Burt Neuborne* and *Charles S. Sims;* for the American Psychiatric Association by *Joel I. Klein;* for the Association of the Bar of the City of New York by *Robert B. McKay, Sheldon H. Elsen, John F. K. Cassidy, Peter L. Zimroth, Alexander R. Sussman, Robinson B. Lacy*, and *John C. Sullivan;* and for the National Institute of Municipal Law Officers by *Roy D. Bates, William I. Thornton, Jr., John W. Witt, Roger F. Cutler*, and *George Agnost.*

Disability Insurance Program (SSD) established by Title II of the Social Security Act, 49 Stat. 622, as amended, 42 U. S. C. § 401 *et seq.*, pays benefits to disabled persons who have contributed to the program and who suffer from a mental or physical disability. The Supplemental Security Income Program (SSI) established by Title XVI of the Act, 86 Stat. 1465, as amended, 42 U. S. C. § 1381, provides benefits to indigent disabled persons. Both statutes define "disability" as the "inability to engage in any substantial gainful activity. . . ." §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual is found to be under a disability only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." §§ 423(d)(2)(A), 1382c(a)(3)(B).

Pursuant to statutory authority, the Secretary of Health and Human Services (Secretary) has adopted complex regulations governing eligibility for SSD and SSI payments. 20 CFR pt. 404, subpart P (1985) (SSD); 20 CFR pt. 404, pt. 416, subpart I (1985) (SSI). The regulations for both programs are essentially the same and establish a five-step "sequential evaluation" process. The first step determines whether the claimant is engaged in "substantial gainful activity." If he is, benefits are denied. 20 CFR §§ 404.- 1520(a),(b), 416.920(a),(b) (1985). If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is "severe"—*i. e.*, one that significantly limits his physical or mental ability to do basic work activities. If the impairment is not severe, benefits are denied. §§ 404.1520(c), 416.920(c). If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the "Listing of Impairments" (listings) contained in subpart P, appendix 1, of the regulations, 20 CFR §§ 404.1520(d), 416.920(d). The listings consist of specified

impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the listed impairments, he is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's "residual functional capacity" (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied. §§ 404.1520(e), 416.920(e).[1] If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. §§ 404.1520(f), 416.920(f). If he does not, benefits are awarded.

The determination whether an individual is disabled is made initially by a state agency acting under the authority and control of the Secretary. 42 U. S. C. §§ 421(a), 1383b(a); 20 CFR §§ 404.1503, 416.903 (1985); see *Heckler* v. *Day,* 467 U. S. 104, 106, and n. 4 (1984). All decisions by the state agency are subject to Quality Assurance Reviews by the Regional Office and by the Central Baltimore Offices of SSA. If the responsible SSA officials determine during either review that a state agency erred, the case is "returned" to the State for correction.

The disappointed claimant is afforded a three-stage administrative review process beginning with *de novo* reconsideration by the State of the initial determination. 20 CFR

---

[1] The RFC assessment is made by a review physician employed by the state agency under contract with SSA. His written conclusion becomes part of the administrative record of the claim. See, *e. g.,* Plaintiffs' Ex. 50, p. 10; App. 148, 158; Record Doc. No. 73; Tr. 27. The District Court found that this assessment is generally given great weight by the administrative law judge on later review. *City of New York* v. *Heckler,* 578 F. Supp. 1109, 1125 (EDNY 1984).

§§ 404.909(a)(1), 416.1409(a) (1985). If a claimant is dissatisfied with the state agency's decision on reconsideration, he is entitled to a hearing by an administrative law judge (ALJ) within SSA's Office of Hearings and Appeals. 42 U. S. C. § 405(b)(1) (1982 ed., Supp. II), 42 U. S. C. § 1383(c)(1); 20 CFR §§ 404.929, 416.1429, 422.201 *et seq.* (1985).[2]

If the ALJ's decision is adverse to the claimant, the claimant may then seek review by the Appeals Council. 20 CFR §§ 404.967–404.983, 416.1467–416.1483 (1985). Proceeding through these three stages exhausts the claimant's administrative remedies. Following the determination at each stage, a disappointed claimant is notified that he must proceed to the next stage within 60 days of notice of the action taken or the decision will be considered binding. *E. g.*, 20 CFR §§ 404.905, 404.909(a)(1), 416.1405, 416.1409(a), 404.-955(a), 404.968(a)(1), 416.1455(a), 416.1468(a) (1985). Thereafter, he may seek judicial review in federal district court, pursuant to 42 U. S. C. § 405(g). See 42 U. S. C. §§ 421(d), 1383(c)(3); 20 CFR §§ 404.900(a)(5), 404.981, 416.1400(a)(5), 416.1481, 422.210 (1985).[3]

---

[2] The Secretary has not provided for a separate reconsideration stage in disability cessation cases under Title XVI. An SSI recipient whose benefits are terminated, therefore, is entitled to proceed directly to an ALJ hearing if he requests one within 60 days of the initial determination. 20 CFR §§ 416.1407, 416.1415 (1985).

[3] Title 42 U. S. C. § 405(g), provides in part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the

## II

On February 8, 1983, respondents the City of New York, the New York City Health and Hospitals Corporation, and two state officials, suing on their own behalf and as *parens patriae*, together with eight named individuals, brought this class action against the Secretary and the Commissioner of SSA. They sought relief on behalf of all individuals residing in the State who had applied for or received SSD or SSI benefits on or after April 1, 1980, who had been found by petitioners to have a severe mental impairment, and whose applications for benefits either had been or were to be denied, or whose benefits had been or were to be terminated, based on petitioners' determination that the claimants were capable of substantial gainful employment.

The gravamen of respondents' complaint was that petitioners had adopted an unlawful, unpublished policy under which countless deserving claimants were denied benefits. They contended that the policy mandated a presumption—applicable at the level of the initial state psychiatric assessment—that a failure to meet or equal the listings was tantamount to a finding of ability to do at least unskilled work; that the presumption led to routine denials of benefits to eligible claimants; and that such a presumption was arbitrary, capricious, and violative of the Constitution, the Social Security Act, and the applicable regulations. Respondents claimed that this internal policy had the effect of eliminating steps four and five from the sequential evaluation process, and thus ignored the requirement for an individualized RFC assessment to determine whether a claimant with a severe condition is nonetheless able to work. They alleged that the policy was never published in the Federal Register as required by the Administrative Procedure Act, but was nonetheless imple-

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

mented through various internal memoranda and the "returns" process by which SSA sends cases back to the States for correction. Respondents contended that failure to make the policy known to claimants denied the individual plaintiffs and class members due process of law.

## A

Following a 7-day trial, the District Court held that from 1978 until at least the early months of 1983,[4] SSA followed the covert policy alleged by respondents and that the policy was illegal. *City of New York* v. *Heckler*, 578 F. Supp. 1109, 1115 (EDNY 1984). The court noted that the "Act and its regulations require the Secretary to make a realistic, individual assessment of each claimant's ability to engage in substantial gainful activity. See *Heckler* v. *Campbell*, [461 U. S. 458] (1983). The class plaintiffs did not receive that assessment." *Id.*, at 1124.[5] Rather, as respondents al-

---

[4] The District Court noted that in 1983 SSA "yielded to pressure to allow medical vocational allowances for those with mental disabilities. The change was precipitated only after the filing of this lawsuit and after a preliminary injunction was issued on December 22, 1982, in the case of *Mental Health Association of Minnesota* v. *Schweiker*, 554 F. Supp. 157 (D. Minn. 1982), *aff'd*, 720 F. 2d 965 (8th Cir. 1983)." 578 F. Supp., at 1115.

[5] The District Court added:

"On the contrary, SSA relied on bureaucratic instructions rather than individual assessments and overruled the medical opinions of its own consulting physicians that many of those whose claims they were instructed to deny could not, in fact, work. Physicians were pressured to reach 'conclusions' contrary to their own professional beliefs in cases where they felt, at the very least, that additional evidence needed to be gathered in the form of a realistic work assessment. The resulting supremacy of bureaucracy over professional medical judgments and the flaunting of published, objective standards is contrary to the spirit and letter of the Social Security Act.

"The Secretary's practices have violated the requirements of her own regulations. Defendants have ignored the five step sequential evaluation process by presuming that the failure to meet listings at step three or four of the process automatically translates into a residual functional capacity to do unskilled work at steps four and five. The bureaucratic assessment of

leged, SSA had consistently "followed a policy which presumes that mentally disabled claimants who do not meet or equal the listings necessarily retain sufficient residual functional capacity to do at least 'unskilled work.'" *Id.*, at 1115. The District Court further found that these tainted RFC assessments by state review physicians were subsequently given "great weight" by ALJ's in the administrative appeal process. *Id.*, at 1125. Moreover, "[t]he means of enforcement of the policy, through internal memoranda, returns, and reviews, has meant that the affected SSD or SSI applicant as well as counsel, social workers and advisers for a long time were unaware of its existence." *Id.*, at 1115. The court stated that evidence of the "fixed clandestine policy against those with mental illness" was overwhelming. *Ibid.*

The District Court certified a class,[6] and decided that the class properly included claimants who had not exhausted administrative remedies. Relying on *Mathews* v. *Eldridge*,

residual functional capacity if it was done at all was reduced to a paper charade where the SSA physician completed a cursory report or checked off a form knowing the conclusion had to be that the claimant had the capacity for unskilled work. Medical experts demonstrated to the court that the symptoms and restrictions of the listings of impairments do not measure an individual's capacity for work or his or her ability to withstand the stress of even the least demanding work." *Id.*, at 1124.

[6] The class was ultimately defined by the District Court after trial as consisting of:

"All individuals residing in the State of New York who have applied for or received Title II and/or Title XVI benefits and who, between April 1, 1980 and May 15, 1983, were found by the New York Office of Disability Determinations to have a functional psychotic or functional nonpsychotic mental impairment which is severe (i. e., determined under 20 CFR § 404.1520(c) or § 416.930(c) to require evaluation under Appendix I of that Regulation), and whose applications for benefits have been denied or whose benefits have been or will be terminated, on the basis of defendants' determination that such persons are capable of substantial gainful activity." App. to Pet. for Cert. 65a.

The class is estimated to include more than 50,000 New York residents. *City of New York* v. *Heckler*, 742 F. 2d 729, 731 (CA2 1984).

424 U. S. 319 (1976), the court concluded that this was an appropriate case in which to waive the statutory exhaustion requirement. In the court's view, both parts of the *Eldridge* test were satisfied here: the claims were collateral to any claim for benefits, and the harm imposed by exhaustion would be irreparable.

Similarly, the District Court decided that the class properly included those who had not complied with the requirement that a claimant seek judicial review within 60 days of the Secretary's final decision or "within such further time as the Secretary may allow." 42 U. S. C. § 405(g). The court noted that the 60-day requirement is not jurisdictional, but rather is a statute of limitations waivable by the parties. *Mathews* v. *Eldridge, supra,* at 328, n. 9; *Weinberger* v. *Salfi,* 422 U. S. 749, 763–764 (1975). Observing that petitioners had made no argument concerning this requirement until their post-trial brief, the court found that "the same reasons which justify implying waiver of the exhaustion requirement are stronger for the sixty day requirement because the statute of limitations is not, as is the exhaustion requirement, 'central to the requisite grant of subject-matter jurisdiction.' *Weinberger* v. *Salfi,* 422 U. S. 749, 764 . . . (1975)." 578 F. Supp., at 1124.

As a remedy, the District Court ordered the Secretary to reopen the decisions denying or terminating benefits, and to redetermine eligibility. As interim relief, the court directed the Secretary to reinstate benefits of all class members who had previously been entitled to benefits but who were subsequently terminated, until the claimant's eligibility was properly determined.[7]

---

[7] The District Court also ordered SSA to notify class members that their claims had been reopened, and to inform class members with an appeal pending before an ALJ that such claimants had the option of proceeding with their appeals upon the existing record rather than with the administrative reopening of their case. App. to Pet. for Cert. 65a–66a.

## B

The Court of Appeals for the Second Circuit affirmed. *City of New York* v. *Heckler,* 742 F. 2d 729 (1984). On appeal petitioners did not challenge the District Court's findings of fact or ruling on the merits, but only raised contentions respecting the District Court's definition of the appropriate class, and the interim relief awarded.[8] With respect to the composition of the class, petitioners asserted that the District Court lacked jurisdiction under § 405(g) over most class members, including (i) claimants who failed to exhaust administrative remedies, and (ii) claimants whose right to pursue administrative or judicial review had lapsed by the time this action was commenced. *Id.,* at 734.

The Court of Appeals rejected petitioners' argument that the District Court lacked jurisdiction over the claims of class members who had failed to exhaust their administrative remedies. It upheld the District Court's finding that the harm caused by the wrongful denials was irreparable. While the court did not believe that the claims were "wholly" collateral to claims for benefits, it was satisfied that the class was complaining "fundamentally of a procedural irregularity and not of the Secretary's substantive standards of eligibility." *Id.,* at 737. Moreover, the Court of Appeals believed it was significant that the District Court was not asked to and did not rule on the merits of the underlying benefit claims.

The court then rejected petitioners' contention that the District Court should not have included within the class those claimants who failed to seek judicial review within 60 days of an adverse decision by the Secretary. The court agreed with the District Court that the 60-day limitation is not a jurisdictional requirement, but rather is a statute of limitations. *Id.,* at 738, citing *Eldridge, supra,* at 328, n. 9; *Salfi, supra,* at 763–764. The Secretary's secretive conduct justi-

---

[8] The Court of Appeals affirmed the District Court's award of interim relief, and petitioners have raised in this Court no issue respecting that portion of the Court of Appeals' decision.

fied tolling the period "during the time that SSA's policy of applying the challenged presumption concerning residual functional capacity remained operative but undisclosed." 742 F. 2d, at 738.[9]

On petition for rehearing, the same panel of the Court of Appeals, per Judge Newman, denied rehearing and in so doing rejected petitioners' argument that passage of the Social Security Disability Benefits Reform Act of 1984, Pub. L. 98–460, 98 Stat. 1794, required the court to alter its holding with respect to the effect of class members' failure to comply with § 405(g). *City of New York* v. *Heckler*, 755 F. 2d 31 (1985). The Secretary sought a writ of certiorari from this Court. We granted certiorari, 474 U. S. 815 (1985), and now affirm.

### III

Petitioners renew here arguments rejected by the Court of Appeals. They challenge on jurisdictional grounds inclusion in the class of two groups of claimants: those who failed to bring a court action within 60 days of a final decision of the Secretary, and those who failed to exhaust administrative remedies. We first consider the requirement embodied in § 405(g) that claims must be presented in the District Court within 60 days of a final decision of the Secretary. Petitioners contend that the provision sets the bounds of the District Court's jurisdiction. This argument is foreclosed by two of our prior decisions that have declared that the 60-day requirement is not jurisdictional, but rather constitutes a period of limitations. *Eldridge, supra,* at 328, n. 9; *Salfi, supra,* at 764.[10]

---

[9] As an alternative basis for jurisdiction, the Court of Appeals relied on 28 U. S. C. § 1361 "in the event that, upon further review, it is determined that section 405(g) jurisdiction is unavailable to some of the class members." 742 F. 2d, at 739. Because we conclude that jurisdiction under § 405(g) is available, we do not reach the issue whether mandamus jurisdiction would have been proper in this context.

[10] We reject petitioners' contention that *Salfi* and *Eldridge* do not stand for the proposition that the 60-day requirement is not jurisdictional. In both cases, jurisdiction was premised on § 405(g), and we noted that we did

Petitioners next contend that if the 60-day limit is a statute of limitations, it is a condition on the waiver of sovereign immunity and thus must be strictly construed. We have no difficulty agreeing with that statement. See *Block* v. *North Dakota*, 461 U. S. 273, 287 (1983). Accepting this proposition, however, does not answer the question whether equitable tolling can be applied to this statute of limitations, for in construing the statute we must be careful not to "assume the authority to narrow the waiver that Congress intended," *United States* v. *Kubrick*, 444 U. S. 111, 118 (1979), or construe the waiver "unduly restrictively." *Block, supra,* at 287. In *Honda* v. *Clark*, 386 U. S. 484 (1967), the Court held that where consistent with congressional intent, and called for by the facts of the case, it would "apply a traditional equitable tolling principle . . . ." *Id.*, at 501.[11] Petitioners argue that *Honda* stands for the proposition that equitable tolling is permissible only in cases in which the public treasury is not directly affected. We decline to hold that the doctrine of equitable tolling is so limited. When application of the doctrine is consistent with Congress' intent in enacting a particular statutory scheme, there is no justification for limiting the doctrine to cases that do not involve monetary relief.

---

not have to consider whether the 60-day requirement had been satisfied because the issue had not been timely raised below. *Eldridge*, 424 U. S., at 328, n. 9; *Salfi*, 422 U. S., at 764. Were the requirement jurisdictional, of course, the Court could not have declined to consider whether it had been satisfied in those cases.

[11] In *Honda* v. *Clark*, United States citizens or residents of Japanese descent sought to recover funds vested under the Trading with the Enemy Act, 40 Stat. 411, 50 U. S. C. App. § 1 *et seq.* Under that Act the United States seized the American assets of businesses owned by Japanese nationals. After the war a mechanism was established to return the assets to their rightful owners or the owners' creditors. The central problem in that case revolved around the fact that the petitioners failed to file a lawsuit challenging a schedule of payments within the applicable 60-day time period. This Court allowed the limitations period to be tolled during the pendency of related litigation because it was consistent with the statutory scheme and equitable principles to do so. 386 U. S., at 501.

We must determine, therefore, whether equitable tolling is consistent with Congress' intent in enacting § 405(g), and whether tolling is appropriate on these facts. The statute of limitations we construe in this case is contained in a statute that Congress designed to be "unusually protective" of claimants. *Heckler* v. *Day*, 467 U. S., at 106. Moreover, Congress has authorized the Secretary to toll the 60-day limit,[12] thus expressing its clear intention to allow tolling in some cases. While in most cases the Secretary will make the determination whether it is proper to extend the period within which review must be sought, cases may arise where the equities in favor of tolling the limitations period are "so great that deference to the agency's judgment is inappropriate." *Eldridge*, 424 U. S., at 330. As in *Honda* v. *Clark*, we conclude that application of a "traditional equitable tolling principle" to the 60-day requirement of § 405(g) is fully "consistent with the overall congressional purpose" and is "nowhere eschewed by Congress." 386 U. S., at 501.

We conclude, moreover, that on these facts the equities in favor of tolling are compelling. As the Court of Appeals' explained:

"All of the class members who permitted their administrative or judicial remedies to expire were entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. Though they knew of the denial or loss of benefits, they did not and could not know that those adverse decisions had

---

[12] SSA's regulations governing extensions of time for filing are based on considerations of fairness to claimants. Thus, the Secretary may grant an extension where a suit was not timely filed because of illness, accident, destruction of records, or mistake. Similarly, an extension may be granted where the claimant misunderstands the appeal process or is unable timely to collect necessary information, or where the Secretary undertook action that "misled" the claimant concerning his right to review. 20 CFR §§ 404.911, 416.1411 (1985). The fairness concerns underlying the regulations support our application of equitable tolling in this case.

been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge. Where the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action. Since in this case the full extent of the Government's clandestine policy was uncovered only in the course of this litigation, all class members may pursue this action notwithstanding the 60-day requirement." 742 F. 2d, at 738 (citations omitted).

In addition to serving its customary purpose,[13] the statute of limitations embodied in § 405(g) is a mechanism by which Congress was able to move cases to speedy resolution in a bureaucracy that processes millions of claims annually. Thus, the limitation serves both the interest of the claimant and the interest of the Government. Tolling, in the rare case such as this, does not undermine the purpose of the 60-day limitations period when viewed in connection with the underlying statute. Rather, it serves the purpose of the Act where, as the Court of Appeals stated, "the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights . . . ." *Ibid.* See also *Heckler* v. *Day, supra,* at 106. Tolling of the 60-day limitations period was appropriate in this case, and the District Court properly included in the

---

[13] As we explained in *American Pipe & Construction Co.* v. *Utah,* 414 U. S. 538, 554 (1974), statutory limitation periods are

"'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them'" (quoting *Railroad Telegraphers* v. *Railway Express Agency, Inc.,* 321 U. S. 342, 348–349 (1944)).

class claimants who had received a final decision from the Secretary, but who did not seek judicial review within the statutory 60-day time period.

## IV

Petitioners also contend that the District Court erred in including in the class those members who failed to obtain a "final decision" from the Secretary as required by § 405(g). To obtain a final decision from the Secretary a claimant is required to exhaust his administrative remedies by proceeding through all three stages of the administrative appeals process. Only a claimant who proceeds through all three stages receives a final decision from the Secretary. At the outset, we note that by the time this lawsuit was filed, it was too late for a large number of class members to exhaust their claims, since expiration of the 60-day time limits for administrative appeals barred further access to the administrative appeals process. See 20 CFR §§ 404.905, 404.909(a)(1), 416.1405, 416.1409(a), 404.955(a), 404.968(a)(1), 416.1455(a), 416.1468(a) (1985). For these claimants, we conclude that exhaustion is excused for the same reasons requiring tolling of the statute of limitations. Since "[m]embers of the class could not attack a policy they could not be aware existed," 578 F. Supp., at 1118; see Part III, *supra*, it would be unfair to penalize these claimants for not exhausting under these circumstances.

At the time the suit was filed, however, some claimants may still have had time to exhaust their administrative remedies. The question remains whether it was permissible to include these claimants in the class. Resolution of this question is aided by cases in which we have been called upon to consider issues of exhaustion under § 405(g). See *Weinberger* v. *Salfi,* 422 U. S. 749 (1975); *Mathews* v. *Eldridge, supra; Heckler* v. *Ringer,* 466 U. S. 602 (1984). Our decisions teach that the "final decision" requirement embodied in that section

"consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be waived by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary." *Mathews* v. *Eldridge*, 424 U. S., at 328.

Ordinarily, the Secretary has discretion to decide when to waive the exhaustion requirement. But as we held in *Eldridge*, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." 424 U. S., at 330.

Two factors influenced the Court's judgment that *Eldridge* was a case in which deference to the agency's determination of finality was not necessary. First, the constitutional challenge brought there was "entirely collateral to [a] substantive claim of entitlement." *Ibid.* Second, the claim rested "on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Id.*, at 331. The petitioner had raised "at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments." *Ibid.*

The claims in this lawsuit are collateral to the claims for benefits that class members had presented administratively. The class members neither sought nor were awarded benefits in the District Court, but rather challenged the Secretary's failure to follow the applicable regulations.

Moreover, as in *Eldridge*, the claimants in this case would be irreparably injured were the exhaustion requirement now enforced against them. The District Court found that class members not only were denied the benefits they were seeking, but "[t]he ordeal of having to go through the administrative appeal process may trigger a severe medical setback.

Many persons have been hospitalized due to the trauma of having disability benefits cut off. Interim benefits will not adequately protect plaintiffs from this harm. Nor will ultimate success if they manage to pursue their appeals." 578 F. Supp., at 1118. Petitioners do not challenge this finding here, and therefore, like the Court of Appeals, "[w]e have no reason to disturb Chief Judge Weinstein's conclusion that the harm caused by wrongful denials was irreparable." 742 F. 2d, at 736. We should be especially sensitive to this kind of harm where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place.

Finally, application of the exhaustion doctrine is "intensely practical." *Eldridge, supra,* at 331, n. 11. In *Salfi,* we explained:

> "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." 422 U. S., at 765.

The ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the *Eldridge* factors, but should also be guided by the policies underlying the exhaustion requirement. The purposes of exhaustion would not be served by requiring these class members to exhaust administrative remedies. This case is materially distinguishable from one in which a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding. In the normal course, such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal

will alert the agency to the alleged deviation. Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context. Thus, our holding today does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings.

These claimants stand on a different footing from one arguing merely that an agency incorrectly applied its regulation. Rather, the District Court found a systemwide, unrevealed policy that was inconsistent in critically important ways with established regulations. Nor did this policy depend on the particular facts of the case before it; rather, the policy was illegal precisely because it ignored those facts. The District Court found that the policy was being adhered to by state agencies due to pressure from SSA, and that therefore exhaustion would have been futile. Under these unique circumstances, there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise. Cf. *McKart* v. *United States*, 395 U. S. 185, 200 (1969).

In addition, the relief afforded by the District Court is fully consistent with the policies underlying exhaustion. The court did not order that class members be paid benefits. Nor does its decision in any way interfere with the agency's role as the ultimate determiner of eligibility under the relevant statutes and regulations. Indeed, by ordering simply that the claims be reopened at the administrative level, the District Court showed proper respect for the administrative process. It did no more than the agency would have been called upon to do had it, instead of the District Court, been alerted to the charge that an undisclosed procedure was illegal and had improperly resolved innumerable claims.

Petitioners correctly assert that, had class members exhausted administrative remedies, some might have received benefits despite the illegal policy. It also is likely that many

may have been disqualified for reasons having nothing to do with the illegal policy. Such observations, however, merely serve to remind us why exhaustion is the rule in the vast majority of cases; they do not aid the Court in deciding when exhaustion should be excused.[14] We hold that the District Court did not err in waiving exhaustion in this case either with respect to those claimants whose time to pursue further administrative appeals had lapsed, or with respect to those claimants who still had time to pursue administrative remedies.

---

[14] Petitioners argue that when Congress in 1984 made comprehensive revisions in the disability program in the Social Security Disability Benefits Reform Act of 1984, Pub. L. 98–460, 98 Stat. 1794, it reaffirmed the finality requirement of § 405(g). In § 2(d) of the 1984 Act (98 Stat. 1797), Congress provided for remand to the Secretary, for redetermination under the new statutory medical improvement standard, of the claims of any individuals who were included in a class that had been certified in a case involving medical improvement, whether or not each individual class member had personally satisfied the jurisdictional requirements of § 405(g).

Congress took a different approach in cases involving individuals who have mental impairments. In § 5(a) of the 1984 Act, 98 Stat. 1801, Congress directed the Secretary to develop new standards for the evaluation of mental impairments. It then provided in § 5(c) (98 Stat. 1802) that any person who had sought benefits based on a mental impairment and who was found to be not disabled on or after March 1, 1981, could reapply to the Secretary and be reevaluated under these new standards.

Thus, petitioners argue that these provisions demonstrate that Congress knew how to grant relief to disability claimants who have not satisfied the exhaustion requirement. We agree with the Court of Appeals' observation in its decision denying the petition for rehearing:

"The Reform Act is remedial legislation, enacted principally to be of assistance to large numbers of persons whose disability benefits have been terminated. It would be a perverse view of Congressional intent if we were to infer from this beneficial legislation a determination on the part of Congress to deny other disability claimants the fruits of a judgment entered in their favor after a ruling that their claims had been unlawfully processed by the Secretary. What the Secretary is urging us to hold is that the Reform Act renders the finality and exhaustion requirements of section 405(g) more stringent than they were before the passage of the Act." *City of New York* v. *Heckler,* 755 F. 2d 31, 33 (1985).

## V

Government agencies administering complex programs that bridge both state and federal bureaucracies necessarily will take certain actions pursuant to policies unknown to the public. We do not suggest that every internal policy that is found to be inconsistent with legal requirements, and arguably touches upon the outcome of a class of cases, will justify tolling the statute of limitations or excusing exhaustion. But, whatever the outer bounds of our holding today, this case falls well within them. While "hard" cases may arise, this is not one of them.

Moreover, we are aware that administrative inconvenience may result from our decision today. But the Secretary had the capability and the duty to prevent the illegal policy found to exist by the District Court. The claimants here were denied the fair and neutral procedure required by the statute and regulations, and they are now entitled to pursue that procedure. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*