Cesar **PERALES**, et al., Plaintiffs,

v.

Edwin **MEESE**, III, et al., Defendants.

No. 88 Civ. 2265(KC).

United States District Court,
S.D. New York.

April 19, 1988.

On Motion for Preliminary Injunction
April 26, 1988.

Stephen Loffredo, Main Street Legal Services, Flushing, N.Y., Hilary B. Klein, Peter L. Zimroth, New York City Law Dept. Corp. Counsel, Judith T. Kramer, Asst. Atty. Gen., State of N.Y., New York City, for plaintiffs.

Noel Ferris, Sp. Asst. U.S. Atty., Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

■ The Government has taken steps to meet plaintiffs' principal complaint: a lack of clearly disseminated standards governing the "public charge" regulations of the Immigration and Naturalization Service, with particular reference to the narrow circumstances in which receipt of AFDC benefits by members of a family unit are relevant to eligibility of an applicant for legalization under the Immigration Reform and Control Act of 1986 ("IRCA").

Specifically, the Service has today promulgated to all regional and district legalization offices, and all Qualified Designated Entities approved to accept legalization applications throughout the nation, definitive instructions and criteria that are not inconsistent with the advice of INS Counsel, its Assistant Commissioner, William S. Slattery, and its Associate Commissioner, Richard E. Norton, set forth and referred to at various points throughout plaintiffs' papers and exhibits.

For the present, the Court finds it unnecessary to grant the relief sought in the application for the Temporary Restraining Order. The hearing on the preliminary injunction sought in this action is scheduled for April 25, 1988, eight days prior to the statutory expiration of the application period for legalization under IRCA. If the plaintiffs prevail at any subsequent stage of this litigation, the Court possesses equitable power to toll the expiration of the statutory time limit to preserve any rights of plaintiffs frustrated by ambiguous procedures. Furthermore, Congress is, according to both parties, considering an extension of the May 4 deadline, which might obviate the need for the preliminary relief sought by plaintiffs. Additionally, the Government has not yet had the opportunity to respond to the voluminous papers of the plaintiffs under the briefing and submission schedule agreed to by all the parties. Finally, the plaintiffs' own proof indicates some doubt as to the effectiveness of a media campaign designed to communicate prior to May 4, 1988 to the immigrant population at large the substance of today's INS advice to its agents and QDEs. It is, therefore, apparent that plaintiffs do not now face irreparable harm, and accordingly, the relief sought in the application

for a Temporary Restraining Order is denied.

SO ORDERED.

## ON MOTION FOR PRELIMINARY INJUNCTION

■ Plaintiffs' motion for a preliminary injunction is in all respects denied. No showing has been made that plaintiffs will be irreparably injured if the relief sought is not granted at this stage of the litigation.

The core of this dispute involves the effect of receipt of public assistance to families with dependent children (AFDC) upon the determination by the Immigration and Naturalization Service (INS) that an applicant is or is not likely to become a public charge, a crucial disqualification factor under the law. The regulations in question have been on the books since May 1, 1987, and the INS has taken steps to substantially clarify their "public charge" meaning in three phases: the November 23, 1987 memorandum of Commissioner Richard E. Norton[1], the February 10, 1988 letter of Assistant Commissioner William S. Slattery, and the April 21, 1988 memorandum of Commissioner Norton. The INS is also attempting to locate applicants who were erroneously excluded under the more restrictive "public charge" standard.[2]

It is now clear that persons who may have been disqualified after having applied, or were discouraged from applying by qualified designated entities (QDEs)— which function as quasi-governmental agencies under IRCA—may now have a wholly new basis to apply based on these clarifications. Because the government concedes that the Commissioner has authority, under conventional administrative powers, to find that constructive filing has occurred with respect to such applicants after the expiration of the amnesty period on May 4, 1988 (see minutes of Hearing,

April 25, 1988), intervention at this time is not necessary.[3] In other words, any harm that might accrue toward plaintiffs is not irreparable.

Nor is there a need for immediate relief with respect to a third category of possible plaintiffs who may not have had any direct contact with the INS or with a QDE, but who could, after expiration of the amnesty period, demonstrate that their dependant American national children received AFDC, and that they decided not to apply on the basis of reading or being apprised of the controlling regulations, which ambiguity is conceded by the Commissioner requiring promulgation of the clarification with only weeks left in the program. Plaintiffs in this category, upon an adequate showing of injury, may be the subject of subsequent remedial relief under the doctrine of equitable tolling. *E.g. Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed. 2d 462 (1986); *In the Matter of Naturalization of 68 Filipino War Veterans*, 406 F.Supp. 931 (N.D.Cal.1975). Accordingly, no irreparable harm has been demonstrated with respect to any prospective member of the class that would justify entry of injunctive relief, especially in light of the fact that Congress has under active consideration extension of the amnesty period beyond May 4, 1988. Indeed, the Court notes that the House of Representatives has voted to approve legislation extending the filing deadline, and this bill is presently receiving active consideration in the United States Senate.

The Court further notes that although it has had this matter under consideration for 25 days and has conducted three hearings, no witnesses have been called to support the plaintiffs' case. Furthermore, the Court observes that the three anonymous individual plaintiffs whose affidavits have

---

1. The Norton memorandum clarified INS' position only with respect to the receipt of Supplemental Security Income by an applicant's immediate family members.

2. These steps, taken voluntarily by the INS, conform substantially to the preliminary relief imposed by the court in *Ayuda v. Meese*, ——

F.Supp. ——, slip op., No. 88–0625 (D.D.C. March 30, 1988).

3. The Commissioner has already effectively extended the May 4, 1988 deadline for applicants who file skeletal applications before May 4, and for applicants who give approval to QDEs to forward their application to the INS.

been submitted have adequate time to submit applications prior to May 4, and have been adequately apprised of their rights (see the Court's order dated April 19, 1988). Finally, it should be emphasized that evidence, by affidavit, of the dimension and character of the class sought to be certified is largely speculative and generalized.

The Court concludes that the rights of all parties can be adequately protected through a systematic and fact oriented trial on the merits, followed by the exercise of the administrative authority of the Commissioner and the equitable power of the Court if the record justifies it.

SO ORDERED.