David **GERBER**, Plaintiff,

v.

Donna E. **SHALALA**, Secretary of Health and Human Services, Defendant.

No. 93 Civ. 6866 (KTD).

United States District Court, S.D. New York.

June 22, 1994.

Harlem Legal Services, Inc., New York City (David Stroh Buckel, of counsel), for plaintiff.

Mary Jo White, U.S. Atty. S.D.N.Y.; New York City (Lorraine S. Novinski, Sp. Asst. U.S. Atty., of counsel), for defendant.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff David Gerber ("Gerber") seeks interim relief from the decision of Secretary of Health and Human Services (the "Secretary") to withhold $50 from Gerber's monthly disability benefits during the pendency of an overpayment dispute. Gerber moves for an order directing the Secretary to stop withholding any part of his benefits at least until a final determination is made as to the liability for the overpayment. The Secretary argues that interim relief must be denied and Gerber's complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) since the court lacks jurisdiction to hear the dispute. For the following reasons, Gerber's application is granted.

### Facts

Gerber first applied for Social Security Disability Insurance ("SSD") on March 25, 1981 on the basis of a mental disorder. This application was denied. He did not appeal the denial. Until 1985, Gerber apparently continuously, but unsuccessfully, attempted to return to the work force. (Compl., Apps. A–C).

On July 3, 1985, Gerber again applied for SSD on the basis of a mental disorder and epilepsy. (Compl., App. D). The Secretary determined that Gerber was disabled and hence, entitled to disability benefits starting as of May 1985. (Compl., App. E). Gerber began to receive monthly benefits in November 1985, and received $2,040.84 in retroactive benefits for the period of May to October 1985. (Machler Dec. ¶ 4).

In January 1988, Gerber again attempted a return to the workforce. (Compl., App. F). Gerber submitted a completed activity report in May 1988, notifying the local Social Security Office of his efforts. (Gerber Aff. ¶¶ 10–13). As a result, the local Social Security Office set up a Trial Work Period Diary.[1] (Compl., App. F). The office told Gerber that his eligibility and benefits would continue for nine months in which he worked. The office also told Gerber that an extended period of eligibility would follow the conclusion of his trial work period. During this extended period of eligibility, Gerber was informed that he would still receive benefits for months in which he did not work. (Gerber Aff. ¶¶ 10–13, and 24). *See* 20 C.F.R. § 404.-1592(a).

On June 14, 1988, pursuant to the relief ordered by the court in *City of New York v. Heckler,* 578 F.Supp. 1109 (E.D.N.Y.), *aff'd,* 742 F.2d 729 (2d Cir.1984), *aff'd sub nom.,* *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the Secretary reopened Gerber's 1981 SSD application. The notification stated this would not affect Gerber's current benefits. (Compl., App. G). In *Bowen,* the District Court found that the Social Security Administration ("SSA") had consistently, and unlawfully, denied SSD to mentally disabled claimants. "The court stated that evidence of the 'fixed clandestine policy against those with mental

---

1. A Trial Work Period "is a period during which you may test your ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). The Trial Work Period begins when one becomes entitled to SSD disability benefits and ends when nine months of work for wages has been performed. 20 C.F.R. §§ 404.1592(a)–(e).

illness' was overwhelming." *Bowen*, 476 U.S. at 475, 106 S.Ct. at 2027. To remedy the harm resulting from SSA's policy, "the District Court ordered the Secretary to reopen the decisions denying or terminating benefits, and to redetermine eligibility." *Id.* at 476, 106 S.Ct. at 2028. Since Gerber had been denied benefits for mental disability when he first applied, his 1981 application was reopened.

As part of re-evaluation process, the SSA required Gerber to complete a work activity report from 1981 to 1985. He did so on July 27, 1988 and reported five work attempts during that period. (Compl., App. C). On October 26, 1988, the Secretary determined that Gerber should have received disability benefits as of December 1980, and, as a result, paid Gerber $23,265 in retroactive benefits in July 1989. (Compl., App. H).

In December 1988, Gerber's employment terminated. He has not worked since. (Gerber Aff. §§ 16–17). Gerber reported this to the local Social Security Office and was informed that his benefits would be fully restored. *Id.*

On April 29, 1991, three years after Gerber filed the required work activity report, the Secretary retroactively terminated Mr. Gerber's benefits as of April 1988 and levied $18,066.40 in overpaid benefits against him. (Compl., App. J). The Secretary reasoned that since Gerber's 1981 application was reopened and accepted, his trial work period actually began in March 1981 rather than May 1985. In calculating the amount of months worked by Gerber, the Secretary included the five times Gerber attempted to work from 1981 through 1985. In so doing, the Secretary determined that Gerber had exhausted the nine month trial work period even before he filed his 1985 application for benefits. As a result, the Secretary determined that Gerber was not eligible for SSD during a major part of the 1981–85 period.

Gerber did not appeal the overpayment decision, but rather, upon the advice of the SSA, Gerber filed a new application for benefits.[2] (Gerber Aff. ¶ 29; Compl., App. K). On December 28, 1991 the SSA retroactively

granted Gerber disability benefits from March 1990. Gerber began receiving monthly benefits in January 1992 and continues to receive benefits from this third application. (Compl., App. M).

To offset the alleged benefits overpayment of $18,066, however, the SSA withheld benefits that had accrued from March 1990 until April 1991. The SSA also began deducting $50 a month from the benefits to further reduce the alleged overpayment to Gerber. Gerber's request for a waiver of the recovery of the overpayment was initially denied on August 23, 1991 (Compl., App. L) and then again on March 9, 1992 (Compl., App. O). On May 14, 1992 Gerber acknowledged an outstanding overpayment of $5,058.90 and agreed to the $50 monthly deduction. (Machler Dec., Ex. 2).

As a result, Gerber requested a hearing before an Administrative Law Judge ("ALJ") which was held on November 5, 1992. By decision dated January 7, 1993, Judge Jacobs found that Gerber was not overpaid. In so ruling, Judge Jacobs reasoned that any services performed by Gerber were unsuccessful work attempts and that his trial work period began in February 1988 and ended in October 1988. (Compl., App. Q).

On May 4, 1993, Gerber requested that a portion of the benefits withheld be paid out. On July 5, 1993, the SSA notified Gerber that he would receive a payment of $5,437.80 and that this amount would be added to his outstanding balance for a total overpayment of $9,189.10. Gerber was also notified that the $50 monthly deduction was effective for 183 months. (Machler Dec., Ex. 4).

On May 25, 1993, SSA's Office of Hearings and Appeals ("Appeals Council") notified Gerber that it disputed Judge Jacobs findings regarding the start of his trial work period. Furthermore, the Appeals Council remanded the case to Judge Jacobs solely to determine whether Gerber's acknowledgement of overpayment on May 14, 1992 waived any recovery of the disputed of the funds by Gerber. (Compl., App. R). Thus, another hearing before Judge Jacobs was scheduled

---

**2.** As the document advising Gerber to file his third application is undated, the record does not

indicate when he was so advised. His third SSD application is dated March 20, 1991.

for November 3, 1993. (Compl., Apps. T, V). On October 1, 1993, Gerber filed a complaint in this matter, and on October 6, 1993 he moved for interim relief. On November 2, 1992, the Secretary moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction. On May 20, 1994, Judge Jacobs issued a decision waiving a portion of the overpayment to Gerber. This decision is currently pending before the Appeals Council.

### Discussion

Gerber argues that he has been harmed by unjustifiable delays while awaiting the Secretary's final decision and as such is entitled to interim relief. The interim relief he seeks would enjoin the Secretary from deducting $50 from his monthly benefits.

In response, the Secretary argues that judicial review is only available for "a final decision of the Secretary made after a hearing" (42 U.S.C. § 405(g)), and that there is no final decision in this instance. Thus, the Secretary argues, this court does not have jurisdiction pursuant to the statute.[3]

Indeed, Gerber does not dispute that there has been no final decision in his case. Rather, Gerber argues that the exhaustion of remedies doctrine may be waived under certain circumstances and that this is one such situation.

■ The final decision required by statute consists of two elements: "(i) the 'jurisdictional', non-waivable requirement that a claim for benefits has been presented to the Secretary and (ii) the "waivable" requirement that the administrative remedies prescribed by the Secretary have been exhausted." *City of New York v. Heckler,* 742 F.2d 729, 734 (2d Cir.1984), *aff'd sub nom. Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 328–30, 96 S.Ct. 893, 899–900, 47 L.Ed.2d 18 (1976) and *Weinberger v. Salfi,* 422 U.S. 749, 764–65, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975)). Gerber has met the first, non-waivable, ele-

ment by pursuing this claim. *Id.* at 736 (all a claimant need do is specifically present the claim that his benefits should not be terminated).

■ Although ordinarily it is within the Secretary's discretion to waive the exhaustion requirement, the second element of a final decision, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Bowen,* 476 U.S. at 483, 106 S.Ct. at 2031 (quoting *Mathews,* 424 U.S. at 330, 96 S.Ct. at 900). In addition, a waiver of administrative exhaustion is appropriate when it does not detract from the underlying principles of the exhaustion doctrine. "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Bowen,* 476 U.S. at 484, 106 S.Ct. at 2032 (quoting *Weinberger v. Salfi,* 422 U.S. at 765, 95 S.Ct. at 2467).

Thus, "[t]he Supreme Court has approved judicial waiver where plaintiff's legal claims are collateral to the demand for benefits, where exhaustion would be futile, or where the harm pending exhaustion would be irreparable." *City of New York v. Heckler,* 742 F.2d at 736 (quoting *Mathews,* 424 U.S. at 330–32, 96 S.Ct. at 900–01). In applying this test, the Second Circuit "adopted a more general approach, balancing the competing considerations to arrive at a just result under the circumstances presented." *Id.*

The SSA took three years to determine that Gerber's trial work period began in 1981 rather than 1988. Furthermore, after another three years, the SSA still has not come to a final decision about the merits of this case. In fact, after two hearings, Judge Jacobs has already partly decided the case in Gerber's favor. If one considers that the issues before the SSA stem from 1981, there is no

---

3. The Secretary also argues that Gerber fails to meet the standard for injunctive relief as the harm he may suffer is not irreparable. As dis-

cussed below, this is simply not the law applicable to the instant claim.

doubt that this delay is unconscionable. Indeed, only because Gerber was one of the successful class action plaintiffs in *Bowen*, did the start date of his trial work period become an issue. As the SSA has had more than ample time to use its expertise to sort out Mr. Gerber's benefits, the policies underlying the exhaustion doctrine can be accomplished only by waiving exhaustion in this instance.

Moreover, as in *Bowen*, the relief sought by Gerber in this court is collateral to his SSD claims. Gerber is solely dependent on SSD income. For him, the $50 monthly deduction from those benefits is not insignificant. (Gerber Aff. ¶ 33). And in *Bowen* itself, the Court held that "the claimants in this case would be irreparably injured were the exhaustion requirement now enforced against them. . . . [T]he ordeal of having to go through the administrative appeal process may trigger a severe medical setback. Many persons have been hospitalized due to the trauma of having disability benefits cut off." *Id.* 476 U.S. at 483–84, 106 S.Ct. at 2032.

Accordingly, for the foregoing reasons, Gerber's motion for interim relief is granted and the Secretary's motion to dismiss is denied.

SO ORDERED.