**Lois M. GRANT, et al., Plaintiffs,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary, United States Department of Health and Human Services, Defendants.**

No. 3:CV–88–0921.

United States District Court, M.D. Pennsylvania.

Nov. 5, 1990.

Fred H. Hait, Carlisle, Pa., Louise O. Knight, Lewisburg, Pa., Laurence E. Norton, II, Peter Zurflieh, Harrisburg, Pa., for plaintiffs.

Felicia L. Chambers, Sheila Lieber, U.S. Dept. of Justice, Federal Programs Branch, Washington, D.C., Bruce Brandler, U.S. Attorney's Office, Scranton, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

This action was commenced on June 17, 1988, when Lois M. Grant filed a complaint in which she named then-Secretary of Health and Human Services Otis R. Bowen, M.D., as the sole Defendant. By order of May 4, 1989, we substituted Louis W. Sullivan, M.D., for Otis R. Bowen, M.D., as the Defendant pursuant to Fed.R.Civ.P. 25(d)(1).

Grant brought this action pursuant to 42 U.S.C. § 405(g) seeking reversal of the final decision of the Defendant denying her benefits under the Social Security Disability Insurance Program established by Title II of the Social Security Act, 42 U.S.C. § 401 et seq. *See Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 2024, 90 L.Ed.2d 462 (1986). Grant predicated her claim for relief upon two theories: (1) the Defendant's decision was not supported by substantial evidence and was contrary to law and (2) ALJ Rowell who presided over Grant's hearing and rendered a decision denying her application for disability benefits was biased against her and against disability claimants generally, thus denying her a fair hearing in violation of the Social Security Act and the due process clause of the Fifth Amendment.

On August 12, 1988, a first amended complaint was filed by Grant, Jamie P. Donnelly, and Harold Wallace on behalf of themselves and a proposed class of individuals (hereinafter referred to as Plaintiffs) consisting of, generally speaking, each claimant for disability benefits under Title II or Title XVI who (1) had received an adverse decision concerning his or her claim from ALJ Rowell, (2) had his or her claim assigned to ALJ Rowell but had not yet received a decision from him, or (3) would in the future have his or her claim assigned to ALJ Rowell for a decision. (The Federal government also provides disability benefits under the Supplemental Security Income Program, established by Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. *Id.*)

On November 10, 1988, Plaintiffs filed a motion for class certification. On December 20, 1988, the Defendant filed a motion for partial judgment on the pleadings, arguing inter alia that the Court lacked jurisdiction to hear Plaintiffs' bias claims. On August 12, 1988, the Plaintiffs served various discovery requests on the Defendant. On November 17, 1988, the Plaintiffs filed a motion to compel discovery. On December 23, 1988, the Defendant filed a motion for a protective order seeking to prevent the Plaintiffs from conducting further discovery in this case.

The Clerk of Court assigned responsibility for this case to us but referred it to United States Magistrate Raymond J. Durkin for preliminary consideration. Magistrate Durkin filed a report on March 20, 1989, in which he recommended (1) that the motion for class certification be denied, (2) that the Defendant's motion for partial judgment on the pleadings on the issue of bias be granted, (3) that the Plaintiffs' motion to compel discovery be dismissed as moot, and (4) that the Defendant's motion for a protective order be dismissed as moot. Magistrate Durkin first analyzed whether the Defendant was entitled to judgment in his favor on the issue of bias. After concluding that the Defendant was entitled to judgment in his favor on the issue of bias, Magistrate Durkin reasoned that there was no justification for certifying the proposed class and there was no reason to permit the Plaintiffs to conduct any more discovery. The Plaintiffs filed objections to Magistrate Durkin's report and recommendations contained therein.

In an order and opinion dated July 27, 1989, we (1) rejected Magistrate Durkin's recommendations, (2) denied Defendant's motion for partial judgment on the pleadings, (3) placed the case on the November, 1989, trial list for the purpose of a hearing on the Plaintiffs' motion filed November 10, 1988, for class certification and (4) remanded the case to Magistrate Durkin for further proceedings. Magistrate Durkin was directed to take action on all pending motions except the motion for class certification. Because we relied upon matters

outside the pleadings in ruling upon the Defendant's motion for partial judgment on the pleadings, we treated the motion as one for summary judgment.

A hearing on the motion for class certification was held on January 22 through January 24, 1990. On February 21, 1990, we entered an order certifying that the action be maintained as a class action pursuant to Fed.R.Civ.P. 23(b), and that the class consists of "all claimants for Social Security disability benefits or Supplemental Security Income disability benefits, or both, who have received, or will receive, an adverse decision from Administrative Law Judge Russell Rowell on or after January 1, 1985, and all disability claimants whose claims have been or will be assigned to ALJ Rowell for a decision." Order, February 21, 1990, paragraphs 1 and 2.

The Plaintiffs' discovery request of August 12, 1988, consisted of fifteen interrogatories and eleven requests for production of documents.

On September 22, 1988, the Defendant served his response to the eleven requests for production of documents. The Defendant refused to produce any documents in response to eight requests for production (Nos. 1–3, 6–8, and 10–11), offering objections to these requests, and he provided documents partially in response to three requests for production (Nos. 4, 5 and 9), objecting to those requests in part. On September 26, 1988, the Defendant served his response to the fifteen interrogatories. He objected to and refused to answer 13 interrogatories (Nos. 3–15) and answered only in part interrogatory No. 2.

The Plaintiffs' motion to compel discovery filed on November 17, 1988, requested that the Defendant be directed to provide answers to nine interrogatories (Nos. 2–4, 6–7, and 12–15) and to produce documents in response to nine of the requests for production (Nos. 1–3, 5–7, and 9–11).

On remand Magistrate Durkin directed that the Defendant provide answers to subsections (a) and (c) of interrogatory No. 2 and interrogatories Nos. 3, 4, 6, 12, 13 and 15. With regard to interrogatories 2(a) and (c) the Defendant did not pursue his objection or argue against the motion to compel and accordingly the Magistrate ordered a response. However, with respect to interrogatories Nos. 3, 4, 6, 12, 13 and 15, Defendant objected on the ground that they were irrelevant to the subject matter involved in the pending action and not calculated to lead to the discovery of admissible evidence, and in addition, objected also to interrogatories Nos. 3 and 4, 12 and 13, and 15, on the ground that they were burdensome. As to these objections, the Magistrate concluded that the Defendant had neither argued specifically against the Plaintiffs' relevancy claims, nor had he offered specifics as to why providing answers would be burdensome. Therefore, the Magistrate directed the Defendant to respond.

With regard to the requests for production of documents, the motion to compel involved requests for production Nos. 1, 2, 3, 5, 6, 7, 9, 10 and 11. Defendant did not pursue objections or argue against the motion to compel request for production No. 5 and the Magistrate therefore directed Defendant to respond. As to request for production No. 3 the Plaintiffs asked that the Defendant be compelled to produce documents that involved any performance review or disciplinary action taken or contemplated by the Defendant with respect to ALJ Rowell, including documents pertaining to his transfer from Harrisburg in January 1988 and any subsequent retraining or counselling of ALJ Rowell, or any disciplinary actions taken in relation thereto. The Defendant objected to the disclosure of this information on the basis inter alia that the Privacy Act, 5 U.S.C. § 552a, prohibits the agency from disclosing such personnel records without the consent of ALJ Rowell. The Magistrate deferred decision on request No. 3 pending receipt of any objection from ALJ Rowell.

On September 14, 1989, ALJ Rowell filed a notice that he objected to the release of personnel-type records. On September 25, 1989 Magistrate Durkin directed that the

Defendant respond to request for production No. 3 with documents relating to disciplinary action involving the charges of bias.

With regard to requests for production Nos. 1, 2, 6, 7, 9, 10 and 11 the Defendant objected on the ground that the documents were protected by the "deliberative process privilege." The Magistrate agreed with the defendant and denied Plaintiffs' motion to compel responses to requests for production Nos. 1, 2, 6, 7, 9, 10 and 11. Subsequently, the Plaintiffs filed objections to Magistrate Durkin's report. On December 22, 1989 we accepted in part and rejected in part the Magistrate's report and directed the Defendant to provide responses to certain interrogatories and to produce certain documents. We agreed with Magistrate Durkin that the Defendant's must respond to interrogatories Nos. 2(a) and (c), 3, 4, 6, 7, 12, 13 and 15. However, we also directed that the Defendant respond to interrogatory No. 14. Apparently Magistrate Durkin was of the view that the Plaintiffs had abandoned that interrogatory because they did not mention it in the brief that was presented to him.

As to requests for production Nos. 6 and 7 the Defendant raised before us an objection based on attorney-client privilege. We determined that the objection was overly broad and ordered the production of the documents which did not involve communications between attorneys for HHS and their clients. Although the Defendant resisted Plaintiffs' motion to compel responses to requests for production Nos. 10 and 11 before the Magistrate we did not order the defendant to produce documents in response to requests for production Nos. 10 and 11 because the Defendant provided the documents in the midst of the Plaintiffs' effort to compel their production. With regard to the requests for production Nos. 1, 2 and 9 we remanded to the Magistrate the Defendant's claim that documents responsive to Plaintiffs' requests for production Nos. 1, 2 and 9 were protected from disclosure by the deliberative process privilege for the purpose of weighing the harm to the Defendant of producing the documents against the need for the documents.

On April 2, 1990 Magistrate Durkin recommended that we deny the Plaintiffs' motion to compel with respect to requests for production Nos. 1, 2 and 9. By order of July 9, 1990 we (1) rejected Magistrate Durkin's report and recommendations, (2) granted Plaintiffs' motion to compel requests for production Nos. 1, 2 and 9, and (3) directed the Defendant to produce the documents requested within 20 days of the date of the order.

The plaintiffs' requests for production Nos. 1, 2, and 9 were as follows:

*Request for Production No. 1.* Produce any and all documents containing communications between decision writers and law clerks on the one hand, and ALJ Rowell on the other hand, including, but not limited to, notes, memos, and instructions relating to any and all social security disability and/or SSI disability cases during the period of January 25, 1988 to the trial of this case. For the purpose of this request, such communications include documents written or received by ALJ Rowell himself, and documents written or received by any and all persons acting on his behalf.

*Request for Production No. 2.* Produce any and all documents written or authorized by ALJ Rowell, including notes and memos written by ALJ Rowell, relating to social security disability and/or SSI disability cases assigned to ALJ Rowell during the period of January 25, 1988 to the trial of this case. This request includes, but is not limited to, notes and drafts of decisions contained in ALJ Rowell's ALJ files.

*Request for Production No. 9.* Produce any and all documents pertaining to the claims of Lois M. Grant and Jamie P. Donnelly, including but not limited to, the ALJ files of ALJ Rowell kept in the Harrisburg Office of Hearings and Appeals, and any and all documents, including worksheets, drafts, analyst notes, etc., kept or generated by or at the Appeals Council in determining their claims and appeals.

In overruling the Defendant's objections to requests for production Nos. 1 and 2 we concluded that the documents which the Plaintiffs requested from the Defendant in the case were unusual because of the nature of the Plaintiffs' claim that ALJ Rowell is biased generally against all claimants for social security disability or supplemental security income disability or both, and thus the Plaintiffs' need for the documents was particularly strong. The interest of the Defendant in not producing the documents was outweighed by Plaintiffs' need for the documents. In overruling Defendant's objection to request for production No. 9 we determined that the Defendant had shown no basis in fact for his claim that the production of Appeals Council documents would interfere with the free and open exchange of ideas and information between decisionmakers and their staff at the Appeals Council.

Our order, dated July 9, 1990, finally disposed of Plaintiffs' motion to compel.

On August 10, 1990, Plaintiffs filed a motion for counsel fees.

The case was placed on the Court's September–October, 1990, trial list for the sole purpose of a hearing on the Plaintiffs' motion for counsel fees. The hearing was held on October 23, 1990. The following are the Court's findings of fact, discussion, and conclusions of law.

## II. Findings of Fact.

1. Plaintiffs' counsel, Lawrence E. Norton, II, spent 70 hours and minutes working on Plaintiffs' motion to compel responses to Plaintiffs' first request for production of documents and set of interrogatories and Plaintiffs' motion for an award of counsel fees, up to and including July 25, 1990.

2. Plaintiffs' counsel, Lawrence E. Norton, II, spent an additional 23 hours and 55 minutes from July 25, 1990, through October 21, 1990, at 11:50 A.M. working on the Plaintiffs' motion for an award of counsel fees.

3. Plaintiffs' counsel, Lawrence E. Norton, II, spent an additional four hours and 20 minutes from October 21, 1990, at 11:50 A.M. until October 22, 1990, at 10:00 A.M. working on Plaintiffs' motion for an award of counsel fees.

4. Records of Mr. Norton's hours, including the dates of activities, the type of activity, and the time spent on the activity were kept concurrently with the time spent.

5. Plaintiffs' counsel, Peter Zurflieh, spent 7 hours and 35 minutes working on Plaintiffs' motion to compel responses to Plaintiffs' first request for production of documents and set of interrogatories up to and including May 22, 1990.

6. Plaintiffs' counsel, Peter Zurflieh, spent an additional 35 minutes from August 1, 1990 up to and including August 7, 1990, working on Plaintiffs' motion for an award of counsel fees.

7. Plaintiffs' counsel, Peter Zurflieh, spent an additional 9 hours and 15 minutes from August 7 through October 21, 1990, at 11:50 A.M. working on Plaintiffs' motion for an award of counsel fees.

8. Plaintiffs' counsel, Peter Zurflieh, spent an additional four hours from October 21, 1990, at 11:50 A.M. through October 22, 1990, at 10:00 A.M. working on Plaintiffs' motion for an award of counsel fees.

9. The total amount of time that Mr. Norton spent working on Plaintiffs' motion to compel responses to Plaintiffs' first request for production of documents and set of interrogatories and in working on Plaintiffs' motion for an award of counsel fees is 98 hours and 15 minutes.

10. The total amount of time that Mr. Zurflieh spent working on Plaintiffs' motion to compel responses to Plaintiffs' first request for production of documents and set of interrogatories and working on Plaintiffs' motion for an award of counsel fees is 21 hours and 25 minutes.

11. Plaintiffs' motion to compel responses to Plaintiffs' first request for documents and set of interrogatories was granted in part and denied in part.

12. Records of Mr. Zurflieh's hours, including the dates of activities, and the type of activity, and the time spent on the activity, were kept concurrently with the time spent.

13. Mr. Norton was the attorney primarily responsible for the work required to compel responses to Plaintiffs' first request for documents and set of interrogatories.

14. Mr. Zurflieh assisted Mr. Norton with the work required to compel discovery, primarily by discussion and reviewing documents.

15. There was no duplication of effort by Mr. Norton and Mr. Zurflieh with respect to Plaintiffs' motion.

16. Defendant introduced no evidence showing that the amount of time spent by Plaintiffs' counsel was unreasonable.

17. Plaintiffs' counsel Lawrence E. Norton, II, graduated from Yale College in 1966 and from Yale Law School in 1969.

18. Mr. Norton is a directing attorney for client services at the Pennsylvania Legal Services Center in Harrisburg, Pennsylvania.

19. One of his responsibilities is to assist attorneys from legal services programs in the Commonwealth of Pennsylvania in litigation on important issues affecting legal services clients.

20. Mr. Norton has held this position since the spring of 1986.

21. Mr. Norton's practice has emphasized federal litigation, in the fields of worker protection, civil rights, and public benefits.

22. Mr. Norton has extensive litigation experience in federal court in civil rights, worker protection, social security, and government benefit cases, including a substantial amount of class action litigation on behalf of Plaintiffs.

23. Mr. Norton seeks $150.00 an hour for his work on Plaintiffs' motion to compel and the motion for counsel fees.

24. Plaintiffs' counsel Peter Zurflieh graduated from Columbia College in 1975 and from Dickinson School of Law in 1981.

25. Mr. Zurflieh is a Special Projects Attorney for Central Pennsylvania Legal Services in Harrisburg, Pennsylvania. One of his primary responsibilities is to litigate and assist other attorneys in Central Pennsylvania Legal Services in litigating important issues affecting legal services clients. Mr. Zurflieh has been employed as a Special Projects Attorney since November 1987.

26. Since 1987, Mr. Zurflieh's practice has emphasized federal litigation in the areas of civil rights and public benefits.

27. Mr. Zurflieh has extensive litigation experience in federal court in civil rights, social security, and government benefit cases, including a substantial amount of class action litigation.

28. Mr. Zurflieh seeks $120.00 an hour for his work on Plaintiffs' motion to compel and their motion for attorney's fees.

29. Thomas B. Schmidt, III, Esq., was called as an expert by the Plaintiffs. Mr. Schmidt has practiced with the firm of Pepper, Hamilton and Scheetz in Harrisburg, Pennsylvania, since 1974. He functions as the managing partner of the firm's Harrisburg Office.

30. Mr. Schmidt has concentrated his practice in civil litigation and a portion of his practice has involved pro bono civil rights litigation for Plaintiffs.

31. Mr. Schmidt's hourly rate is presently $200.00. He is aware of the rates charged by firms in Harrisburg, Pennsylvania.

32. Mr. Schmidt has become familiar with the present litigation by reviewing the court's opinion in *Grant v. Sullivan*, 720 F.Supp. 462 (M.D.Pa.1989), the court's discovery orders and opinions of December 22, 1989, and July 9, 1990, and the Magistrate's orders and opinions of September 1 and 22, 1989, and March 30, 1990.

33. Mr. Schmidt is familiar with the background and experience of Mr. Norton and Mr. Zurflieh as set forth in the affidavits of counsel submitted in support of Plaintiffs' motion for attorney's fees.

34. It is Mr. Schmidt's opinion that the hourly rates sought by Mr. Norton and Mr. Zurflieh are consistent with the hourly rates charged by law firms in the Central Pennsylvania area for attorneys of comparable age and experience and that Mr. Norton's and Mr. Zurflieh's rates are reasonable in the circumstances of the present litigation.

35. Clifford A. Rieders, Esq., was also called as an expert by the Plaintiffs. Mr. Rieders has been engaged in the practice of law, including litigation, in the Middle District of Pennsylvania, since 1975.

36. Mr. Rieders is familiar with the fees charged in the Middle District of Pennsylvania, based upon his examination of fee petitions filed by his firm and other firms and his review of federal court decisions concerning allowable hourly rates for attorney's fees and also based upon his discussions with other counsel at meetings of the Board of the Pennsylvania Trial Lawyers Association.

37. Mr. Rieders has become familiar with the present litigation by reviewing the court's opinion in *Grant v. Sullivan,* 720 F.Supp. 462 (M.D.Pa.1989), the Court's discovery orders and opinions of December 22, 1989, and July 9, 1990, and the Magistrate's orders and opinions of September 1 and 22, 1989, and March 30, 1990.

38. Mr. Rieders is familiar with the background and experience of Mr. Norton and Mr. Zurflieh as set forth in the affidavits of counsel submitted in support of Plaintiffs' motion for counsel fees.

39. It is Mr. Rieders's opinion that a reasonable hourly rate to be charged in the Middle District in litigation requiring the background and diligence required in the present case for attorneys such as Mr. Norton and Mr. Zurflieh is $150.00 and $120.00 respectively.

40. In the second half of 1988 and early 1989, the hourly rate charged by Mr. Norton was $125.00.

41. In the second half of 1988 and the early part of 1989, Mr. Zurflieh's hourly rate was $100.00.

42. Mr. Norton reviewed his hourly rate on or about July 25, 1990, and increased the hourly rate from $125.00 to $150.00. At the same time Mr. Zurflieh's rate was reviewed and increased from $100.00 to $120.00 per hour.

### III. Discussion.

The Defendant objected to and opposed plaintiffs' motion to compel responses to interrogatories Nos. 6 and 7 and requests for production Nos. 10 and 11 on the basis of relevancy alone and interrogatories Nos. 3, 4 and 12–15 on the basis of relevancy and burdensomeness. Defendant's objections on these grounds were made when he served his responses on September 22, 1988 and September 26, 1988.

The major controversy involved in this discovery dispute concerned the relevance of the requested information. On this issue the Defendant relied primarily on his assertion that information regarding bias with respect to one claimant would not be relevant to any claim of bias as to another claimant. Defendant's opposition on relevancy grounds rested on his position that information regarding bias with respect to one claimant would not be relevant to any claim of bias as to another claimant. The Defendant made this argument repeatedly despite the fact that Plaintiffs sought to prove that ALJ Rowell was biased generally against all claimants coming before him so that a showing of general bias would necessarily affect not just one claimant but many and possibly all claimants. Defendant's insistence that proof of general bias in one case had no relevancy to bias against claimants in other cases is illogical. This argument made no sense in a case in which Plaintiffs asserted general bias. The Magistrate concluded that the objections on the basis of relevancy and burdensomeness were not supported by any specifics.

Defendant also argues that his opposition to the motion to compel was justified by the filing of his motion for partial judgment on the pleadings and that while this motion was pending he could legitimately oppose Plaintiffs' motion on relevancy and

burdensomeness grounds. We are of the view that the pendency of a dispositive motion is not a substantial justification to oppose a relevant discovery request. If this were a substantial justification, what was the justification for maintaining opposition after our July 27, 1989 order?

Plaintiffs filed the motion to compel on November 17, 1988. Then, on December 20, 1988, the Defendant filed his motion for partial judgment on the pleadings. After filing this motion, the Defendant raised as additional grounds for objecting to discovery his pending motion. On July 27, 1989 we denied Defendant's motion and recognized Plaintiffs' right to proceed with discovery on the issue of general bias of ALJ Rowell. From that date until September 1, 1989, the date on which Magistrate Durkin issued his first order granting, in part, Plaintiffs' motion to compel, the Defendant took no action to provide any of the documents or any responses to interrogatories subject to the motion to compel.

Plaintiffs moved to compel answers to interrogatories Nos. 2(a) and (c) and request for production No. 5. The Magistrate granted Plaintiffs' motion to compel responses concluding that the Defendant had interposed no objection either to answering the interrogatory or to producing the documents requested.

■ We are of the view that the Defendant has failed to establish that he was substantially justified in resisting Plaintiffs' motion to compel responses to interrogatories Nos. 2(a) and (c), 3, 4, 6, 7, 12, 13, 14 and 15 and requests for production Nos. 5, 10 and 11.

The Defendant objected to and opposed Plaintiffs' motion to compel production of documents in response to requests for production Nos. 1, 2 and 9. These requests sought notes and instructions from ALJ Rowell's files made contemporaneously with his decisionmaking on cases involving Plaintiffs' claims and documents produced at the Appeals Council level in determining the claims of the Plaintiffs. The Defendant opposed responding to these requests on relevancy and deliberative process grounds. The relevancy grounds were not supported by specifics. With respect to the deliberative process grounds for opposing the production of these documents, documents serving identical or similar functions in the decisionmaking process within the Social Security Administration were produced by the Defendant in the case of Tate v. Bowen, No. 84–1495.

Given the fact that these same types of documents were produced by the Defendant previously, the Defendant was in a position to show some specific harm to the deliberative process from having disclosed these documents. His failure to do so in this case demonstrates that the harm asserted by the Defendant from producing the documents was speculative. Defendant's failure to provide any factual basis for believing that harm would result from production of these documents demonstrates that his opposition to the motion to compel responses to requests for production Nos. 1, 2 and 9 was without substantial justification.

■ The Defendant objected to and opposed Plaintiffs' motion to compel responses to requests for production Nos. 6 and 7 on grounds of relevancy, attorney-client privilege and work product privilege. The relevancy objection was without substantial justification. With respect to the attorney-client privilege we concluded that the objection was overly broad and directed that the Defendant produce documents that did not involve attorney-client privilege. However, we are of the view that the Defendant was substantially justified in opposing requests for documents that contained information and reflected communications covered by the attorney-client and work product privileges.

Finally, Defendant objected to and opposed Plaintiffs' motion to compel a response to request for production No. 3. We are of the view that request for production No. 3 was overly broad and that the Defendant was substantially justified in opposing the production of documents other than documents reflecting disciplinary action taken against ALJ Rowell regarding charges of bias.

The Defendant has been compelled to respond to the great bulk of the eighteen interrogatories and requests for production pursuant to Rule 37 of the Federal Rules of Civil Procedure. Prior to 1970, a party successful in compelling discovery was entitled to an award of expenses if the court found that opposition to the motion was not substantially justified. Under this scheme, awards of expenses were rare. See Notes of Advisory Committee on Rules, Subdivision (a)(4).

In 1970, Rule 37(a)(4) was amended to expand the availability of an award of expenses and fees against parties whose conduct necessitated a motion to compel discovery. The change requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified. The test of "substantial justification" remained but the change in language was intended to encourage judges to be more alert to abuses occurring in the discovery process. In effect the burden was shifted to the losing party to establish that he was substantially justified in resisting the motion to compel discovery. *See Hansen v. Shearson/American Express, Inc.*, 97 F.R.D. 465, 466 (Pa.1983).

Rule 37(a)(4) provides in part:

If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

\* \* \* \* \* \*

If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

Because the Plaintiffs' motion to compel was granted in part and denied in part we will apportion the expenses incurred among the parties.

IV. Conclusions of Law.

1. Opposition to Plaintiffs' motion to compel responses to interrogatory Nos. 2(a) and (c), 3, 4, 6, 7, 12, 13, 14 and 15 and requests for production Nos. 1, 2, 5, 9, 10 and 11 was not substantially justified.

2. Opposition to Plaintiffs' motion to compel responses to request for production No. 3 was substantially justified to the extent that Plaintiffs were attempting to obtain documents other than documents reflecting disciplinary action taken against ALJ Rowell regarding charges of bias.

3. Opposition to Plaintiffs' motion to compel responses to requests for production Nos. 6 and 7 was substantially justified to the extent that Plaintiffs were attempting to obtain documents covered by the attorney-client and work product privileges.

4. The 98 hours and 20 minutes spent by Plaintiffs' counsel Lawrence E. Norton, II and the 21 hours and 25 minutes spent by Plaintiffs' counsel Peter Zurflieh were reasonably necessary with respect to Plaintiffs' motions.

5. The hourly rate of $150.00 for Mr. Norton and $120.00 for Mr. Zurflieh are reasonable rates to be charged in the Central Pennsylvania area for the services rendered after July 25, 1990.

6. Prior to July 25, 1990, $125.00 per hour for Mr. Norton and $100.00 per hour for Mr. Zurflieh are reasonable rates to be charged in the Central Pennsylvania Area and the Middle District for attorneys of their age, background and experience in a case such as this one.

7. A fair and just apportionment of the counsel fees incurred by the Plaintiffs in pursuing the motion to compel and the motion for counsel fees is that the Defendant be responsible for 90% and the Plaintiffs 10%.

8. The following is the calculation of the fees and expenses to which Plaintiffs' counsel are entitled with respect to the pending motion:

Lawrence E. Norton

| | | |
|---|---|---|
| Up to and including July 25, 1990 | 70 hours 5 minutes × $125.00 per hour = | $ 8,760.42 |
| From July 25 up to October 21, 1990, at 11:50 A.M. | 23 hours 55 minutes × $150.00 per hour = | 3,587.50 |
| From October 21, 1990 at 11:50 A.M. up to October 22, 1990 at 10:00 A.M. | 4 hours 20 minutes × $150.00 per hour = | 650.00 |

Peter Zurflieh

| | | |
|---|---|---|
| Up to and including May 22, 1990 | 7 hours 35 minutes × $100.00 per hour = | 758.33 |
| August 1, 1990 through August 7, 1990 | 35 minutes × $120.00 per hour = | 70.00 |
| From August 7, 1990 up to October 21, 1990 at 11:50 A.M. | 9 hours 15 minutes × $120.00 per hour = | 1110.00 |
| From October 21, 1990 at 11:50 A.M. up to October 22, 1990 at 10:00 A.M. | 4 hours × $120.00 per hour = | 480.00 |
| Total | | $15,416.25 |

---

9. The total reasonable counsel fees incurred by Plaintiffs in pursuing the motion to compel discovery and for an award of counsel fees after the above apportionment of 10% is $13,874.63.