**FLORIDA PHARMACY ASSOCIATION,
et al., Plaintiffs,**

v.

**Robert B. WILLIAMS, et al., Defendants.**

**No. TCA 92–40142–MMP.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Nov. 8, 1993.

Daniel C. Brown, Katz, Kutter, Haigler, Alderman, Davis, Marks & Bryant, Tallahassee, FL, for plaintiffs.

## ORDER

PAUL, Chief Judge.

This cause is before the Court on cross-motions for summary judgment (doc. 21 & doc. 25). For the reasons stated below, summary judgment is GRANTED in favor of Defendants.

## BACKGROUND

The Medical Assistance Program (Medicaid) established by Title XIX of the Social Security Act is a cooperative program in which the federal government works with state governments to assist low-income individuals in attaining health care. 42 U.S.C. § 1396 *et seq.* The program is jointly financed by the federal and state governments and is administered by the states. Participation is voluntary. If a state chooses to participate in the Medicaid program, it submits a "state plan" for approval by the Department of Health and Human Services ("HHS"). When the plan is approved, the state is eligible for federal reimbursement, or "federal financial participation."

The part of the Medicaid program involved in this matter is the prescription drug program. In this program, a Medicaid recipient is required to obtain his prescription drugs from a provider pharmacy; that is, a pharmacy that participates in the Medicaid program. The pharmacy fills the prescription at no charge to the recipient and sends a voucher to the state for reimbursement. The federal regulations set limits for these reimbursements. Under 42 C.F.R. § 447.331(b), the level of payment for single-source drugs may not exceed the lower of (1) the state's best estimate of the price generally and currently paid by providers for a particular drug, plus a reasonable dispensing fee; or (2) the provider's usual and customary charges to the general public.

On November 5, 1990, Congress enacted Omnibus Budget Reconciliation Act of 1990 (OBRA) which added *inter alia,* to the Social Security Act a provision imposing a four-year moratorium on any reduction in drug reimbursement limits by either the HHS or any state participant. The relevant provision provides:

(f) Pharmacy reimbursement

(1) No reductions in reimbursement limits

(A) During the period of time beginning on January 1, 1991, and ending on December 31, 1994, the Secretary may not modify by regulation the formula used to determine reimbursement limits described in the regulations under 42 CFR 447.331 through 42 CFR 447.334 (as in effect on November 5, 1990) to reduce such limits for covered outpatient drugs.

(B) During the period of time described in subparagraph (A), any State that was in compliance with the regulations described in subparagraph (A) may not reduce the limits for covered outpatient drugs described in subparagraph (A) of dispensing fees for such drugs.

42 U.S.C. § 1396r–8(f).

After the effective date of OBRA, the Florida legislature passed an appropriations bill that, among others, directed the Department of Health and Rehabilitative Services (HRS) to implement a co-payment program for the Medicaid prescription drug program. 1992 Fla.Laws ch. 92–5. Pursuant to this mandate, HRS passed Emergency Rule 10CER92–4 (Rule). The Rule requires a Medicaid recipient to pay a one dollar co-payment directly to the provider pharmacy for each prescription reimbursed by Medicaid, subject to certain defined exclusions. Emergency Rule 10CER92–4(6)(f). The rate of reimbursement was not changed under this Rule; however, the State now automatically deducts the co-payment from the calculated reimbursement total. *Id.*

Even though the Rule requires a Medicaid recipient to pay a co-payment, the federal regulations forbid the provider pharmacy from denying services to a recipient who is financially unable to pay the co-payment. 42 U.S.C. § 1396o(e). Thus, the Rule provides that "[a] provider must determine a recipient's ability to pay the co-payment based on the recipient's reply to the request for payment, the recipient's past purchase history with that provider, and the recipient's recent

purchases of non-essential items." *Rule* § 16(b). A provider pharmacy cannot refuse to fill the prescription to a recipient because of an inability to pay the co-payment. *Id.* § 16(c).

The Florida Pharmacy Association brought this suit to challenge the provisions of Florida appropriation bill, Chapter 92–5, which direct HRS to implement the co-payment program, and the Rule, which implements the legislative mandate. The plaintiffs' main contention is that, because it mandates an automatic one dollar deduction from the reimbursement total for every prescription, the Rule conflicts with the four year moratorium on state reductions in reimbursement totals imposed by OBRA, and should be stricken as such.

## DISCUSSION

■ The Medicaid program is a voluntary program. States are not required to participate in the program. *King v. Smith,* 392 U.S. 309, 316–18, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). Once it chooses to participate, however, it must abide by those obligations imposed by the Medicaid program. *Harris v. McRae,* 448 U.S. 297, 300–03, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Otherwise, the state would not receive financial assistance from the federal government. *Pennhurst State School v. Halderman,* 451 U.S. 1, 17–19, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981). Thus, by choosing to participate in the Medicaid program, the state affirmatively takes the duty of abiding by federally imposed obligations in return for federal funds. *Id.* The Supreme Court in *Pennhurst* likened this relation to a contractual relation. *Id.* The Court stated, in dictum, that in order for a federal duty to exist in this context, it must be set forth clearly and unambiguously. *Id.* Therefore, this Court must construe strictly when deciding whether the Medicaid program imposes a certain duty on participating states. *Id.*

### I. Violation of OBRA '90

■ Plaintiffs challenge the Florida's one dollar co-payment program on the theory that it conflicts with the moratorium imposed by OBRA, which prohibits reduction in Medicaid reimbursement limits on prescription drugs. This is not the case. Under the Medicaid program, participant states are authorized to institute a co-payment program. 42 U.S.C. § 1396a(a)(14) (1992); 42 C.F.R. § 447.53 (1992). A co-payment simply means that the Medicaid recipient pays a part of the cost of the drugs. Thus, it does not change how much reimbursement pharmacists receive; they are still entitled to the same amount of reimbursement as before. The pharmacists, however, now have two sources of reimbursement. Whether one of the sources, the recipients, may not be so forthcoming with reimbursement does not change the fact that the reimbursement limits have not been changed by the co-payment program. In so far as the Florida's co-payment program does not change the level of reimbursement to pharmacists, it is not in conflict with the moratorium imposed by OBRA.

■ Plaintiffs also contend that Florida cannot start deducting the co-payment from the reimbursement total until the amendment to the state medicaid plan implementing such program is approved by the U.S. Department of Health and Human Services. However, the Medicaid Act does not require prior approval before a state plan amendment can be implemented. *Charleston Memorial Hospital v. Conrad,* 693 F.2d 324, 332–33 (4th Cir.1982). Thus, Florida was within its rights when it implemented the co-payment program prior to obtaining approval from the U.S. Department of Health and Human Services.

Plaintiffs argue that the Florida's co-payment program is without the force of law because the Florida legislation authorizing the co-payment program was preempted by the federal law. Plaintiffs' contention is without merit. As discussed previously, the Medicaid program is a voluntary program; states can choose whether they want to be part of the program. *King v. Smith,* 392 U.S. 309, 316–18, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). Had Congress intended to preempt in this field, it would not have made the participation optional. Further, assuming *arguendo* that the Medicaid Act preempts in this field, plaintiffs are still without a cause of action because the co-payment

is specifically authorized by, and thus consistent with, the Medicaid Act.

## II. Unconstitutional Deprivation

In Second Claim of the amended complaint, plaintiffs advance a novel claim based on Article I, § 2 of the Florida constitution. Plaintiffs allege that the co-payment program unconstitutionally deprived of their reward for industry in violation of the Florida constitution. Neither sides could cite to any Florida case decided on the basis of the right "to be rewarded for industry." Fla. Const. article I, § 2. Read broadly, however, this claim parallels plaintiffs' now abandoned claim of unconstitutional taking. Since a legislative change affecting reimbursement does not constitute a taking if the change affects providers voluntarily participating in a regulated industry, *Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir.1986), this Court finds the plaintiffs' argument meritless.

## III. Violation of 42 U.S.C. § 1983

In Third Claim, plaintiffs assert § 1983 claim based on violation of OBRA '90. Because this Court finds no violation of OBRA '90, this claim is moot.

## CONCLUSION

Accordingly, summary judgment is GRANTED in favor of Defendants.

DONE AND ORDERED.