Russell C. DOANE, Plaintiff–Appellant,

v.

Michael ESPY, Secretary, United States Department of Agriculture, Defendant–Appellee.

No. 93–2911.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1994.

Decided June 16, 1994.

---

Alan R. Malasky, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC (argued), William R. Steinmetz, Reinhart, Boerner, Vandeuren, Norris & Rieselbach, Milwaukee, WI, for plaintiff-appellant.

Mark S. Flynn, Dept. of Labor, Office of Sol., (argued), Margaret M. Breinholt, Raymond Fullerton, Dept. of Agriculture, Office of Gen. Counsel, Washington, DC, Christa A. Reisterer, Asst. U.S. Atty., Madison, WI, for defendant-appellee.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and NORGLE, District Judge.*

BAUER, Circuit Judge.

Russell Doane owns Doane Farms in Dunn County, Wisconsin, where he raises dark red kidney beans and corn. He also owns a sixty percent interest in Chippewa Valley Bean Company ("CVBC"), a licensed public warehouse for storing and handling kidney beans that also acts as a marketing agent for producers who wish to sell their kidney beans. During the summer of 1988, a severe drought caused a nineteen percent loss of Doane's corn crop and a fifty-one percent loss of his kidney bean crop. Subsequently, Doane applied for benefits pursuant to the Disaster Assistance Act of 1988, 7 U.S.C. § 1421 note, §§ 201–44. The Department of Agriculture rejected his application on the grounds that gross revenue attributed to Doane exceeded an eligibility ceiling and rendered him ineligible for benefits. After exhausting his administrative remedies, Doane filed this action in the district court seeking to overturn the rejection of his application and claiming that the calculation of his gross revenue was incorrect. The district court upheld the agency's determination that Doane was ineligible for benefits under the Act. Doane appealed, and we reverse.

The Act authorizes disaster payments to producers (farmers) who suffered crop losses caused by drought, hail, excessive moisture, or related conditions in 1988. The Act was "intended to enable the producer to meet preexisting commitments and obligations, to protect the infrastructure of the United States agricultural production input, supply, marketing, and distribution systems, and to preserve the vitality and financial health of rural communities." 7 U.S.C. § 1421 note,

* The Honorable Charles R. Norgle, Sr., United States District Judge for the Northern District of Illinois, is sitting by designation.

§ 241. The Secretary of Agriculture is the official responsible for administering the Act. As such, he is ultimately responsible for determinations made by the Agricultural Stabilization and Conservation Service ("ASCS"), the entity responsible for the initial determination of eligibility under the Act, and the ASCS's Deputy Administrator for State and County Operations ("DASCO"), the official responsible for reviewing initial decisions by the ASCS.

Eligibility under the Act is determined in accordance with 7 U.S.C. § 1421 note, § 231. It states:

(a) General Rule.—A person that has qualifying gross revenues in excess of $2,000,-000 annually, as determined by the Secretary of Agriculture, shall not be eligible to receive any disaster payments or other benefits under this title.

(b) Qualifying gross revenues.—For purposes of this section, the term "qualifying gross revenues" means—

(1) if a majority of the person's annual income is received from farming, ranching, and forestry operations, the gross revenue from the person's farming, ranching, and forestry operations; and

(2) if less than a majority of the person's annual income is received from farming, ranching, and forestry operations, the person's gross revenue from all sources.

The controversy before us turns on the application of this statute by the Secretary to Doane's situation. In 1987, Doane's corn and kidney bean farming operations grossed $1,962,154.03. Under the statute, Doane qualifies for disaster payments if his gross revenue from other sources is less than that figure. For Doane, the deciding factor is the amount of gross revenue attributed to CVBC.[1] Doane does not dispute that all of CVBC's revenue is imputed to him, pursuant to 7 U.S.C. § 1421 note, § 211(d)(1) and 7

C.F.R. § 795.8(a), because of his stake as sixty percent shareholder.[2] A review of CVBC's business operations reveals the difference of opinion between the parties.

CVBC stored kidney beans, both beans that it owned and beans that other producers owned. As to the beans CVBC did not own, the producers retained title. In its capacity as a marketing agent, CVBC was responsible for negotiating a sales price with a potential buyer, which CVBC then communicated to the beans' owner for acceptance or rejection. If the producer accepted the price negotiated by CVBC and the buyer, CVBC delivered the beans to the buyer. The buyer then paid the purchase price to CVBC, which deducted its selling commission and expenses and forwarded the balance to the producer. The producer retained title to the beans until the title to the beans passed to the buyer; CVBC never assumed title to the beans.

In 1987, CVBC received $550,413.31 for selling beans that it owned. In its role as marketing agent, CVBC sold beans belonging to other producers and collected $2,832,-581.82. From this figure, CVBC deducted and kept $199,068.67 as commissions and expenses and forwarded the difference, $2,633,-513.15, to producers.

In determining Doane's eligibility for disaster payments, the Secretary considered CVBC's gross revenue to include the total receipts from the sales of other producers' beans rather than simply CVBC's commissions and expenses from those sales. The Secretary calculated CVBC's gross revenue to be $3,382,995.13, combining CVBC's sales of its own beans with the sales of other producers' beans. Then, pursuant to the statute, the Secretary combined Doane's revenue from farming and that attributed to CVBC and calculated Doane's "qualifying gross revenues" to be in excess of five million

1. Doane received gross revenue in the amount of $48,800 in his capacity as a dealer of Bidwell combines. Because this is a relatively small dollar amount, gross revenue from this source has no impact on the calculation of Doane's qualifying gross revenues.

2. The Act specifically authorizes the Secretary to define "person" under the Act in conformity with the Food Security Act of 1985. 7 U.S.C. § 1421

note, § 211(d)(1). Regulations promulgated pursuant to that piece of legislation state that "a corporation in which more than 50 percent of the stock is owned by an individual ... shall not be considered as a separate person from such individual...." 7 C.F.R. § 795.8(a). Consequently, the gross revenue of CVBC is attributed to Doane.

dollars, considerably over the two million dollar statutory ceiling. Consequently, he adjudged Doane ineligible for disaster payments.

The Secretary justifies his decision on the grounds that CVBC never placed the funds it received on behalf of the producers in a trust fund or escrow account, and therefore, CVBC had control of the funds until it paid the producers. This control over the sales receipts, he argues, provides a reasonable basis for attributing the money from the sales of other producers' beans to CVBC. The Secretary likens this situation to any other business that acquires goods, sells the goods, and computes its profit by subtracting the cost of the goods from the sale price; he believes that Doane is trying to claim just this "profit" as CVBC's revenue.

In support of his position, the Secretary states that without a rigid rule requiring that funds such as these be placed in a special account, the burden on administering this program would be too great to bear. He claims the Department of Agriculture would be forced to assume the role of a "mini-Internal Revenue Service," attempting to track the ownership of funds hither and yon to determine whether applicants meet the statute's eligibility requirements.

■ Our standard of review is dictated by the Administrative Procedure Act ("APA"). The APA states that a reviewing court is to overturn an agency action if the agency's determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 702(2)(A). In this context, because Congress has not clearly addressed the statutory issue before us, we are to determine whether the Secretary has based his decision on a "permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Essentially, we inquire as to whether the Secretary's interpretation and application of the Act is reasonable. *Hanson v. Espy*, 8 F.3d 469, 472 (7th Cir.1993).

■ Doane argues that it is improper to include in the calculation of CVBC's gross revenue the money forwarded to the producer in remuneration for the beans. He contends that the beans never belonged to him and neither did the money received from the purchaser of the beans. He points out that had the Secretary excluded money remunerated to the producers from CVBC's gross revenue, Doane would be eligible for benefits because his gross revenue from farming would have exceeded that of CVBC; accordingly, his gross revenue from farming would be his "qualifying gross income" and would satisfy the $2,000,000 ceiling.

We agree with Doane that the Secretary's position in this instance is unreasonable and arbitrary. CVBC, as bailor of the beans, holds them until the producer agrees to terms of a sale. Only the producer can set those terms. By the terms of the bailment, CVBC can do nothing with the beans but exercise proper care in storing them. Then, once the producer orders it to do so, CVBC delivers the beans and collects payment. CVBC has no more claim to the proceeds of sales than it does to the beans themselves, and the Secretary agrees that CVBC never gains title to the beans it stores.

■ The arrangement between CVBC and the producers bears considerable semblance to that of an agent responsible for its principal's collections. The agent is bound to turn over the balance of the collection proceeds to the principal after deducting money to which he is entitled. *See* Restatement (Second) of Agency § 427 (1984). The agent is required to properly care for the money, but there is no question to whom the money belongs—the principal. Similarly, there is no reasonable basis on which to assign the proceeds of the sale to CVBC.

In addition, we are not sure how the formalistic requirement of placing the proceeds of sales in a special account as suggested by the Secretary demonstrably alters the ownership of the funds; CVBC exercises control over the funds at some point in the process. That is, at some point, CVBC will be in a position to wrongfully divert the funds so that the producers would not be promptly paid. The Secretary contends that CVBC, by depositing checks from buyers in its general account, can do whatever it chooses with

those funds. But since the checks are made payable to CVBC anyway, CVBC conceivably can do with the proceeds as it pleases, regardless of the existence of special accounts. Further, even if CVBC follows an example in the ASCS handbook and deposits the proceeds in a trust fund account that permits checks to be drawn only to the producers or to the general account of CVBC, CVBC would still be in control over the funds and could draft a check to its own account.

The point is that CVBC's legal position and the producers' legal position with respect to CVBC are identical in either scenario. The type of account in which CVBC deposits the proceeds of sales has no bearing on the ownership of the funds in a legal, business, or practical sense. If CVBC does not remunerate the proceeds of the sales to the producers in a timely fashion, the producers have a cause of action against CVBC. It is, after all, their money.

■ While we understand the difficulty in efficiently administering such a far-reaching program as this, ease in administration is not enough to justify an otherwise unreasonable and arbitrary interpretation of this statute. See Bowen v. City of New York, 476 U.S. 467, 487, 106 S.Ct. 2022, 2033, 90 L.Ed.2d 462 (1986). This is not to say that a potential applicant is not well-advised to follow certain formalities in presenting its case to the Secretary; indeed, this controversy has cost Doane the use of money intended by Congress to be available to him. In this case, however, the lack of formality is irrelevant to Doane's eligibility under the statute. It is clear to all concerned that CVBC has no claim to other producers' beans or, therefore, to the proceeds of the sales of those beans, except to the extent that it has earned commissions. These proceeds, then, are not to be included in CVBC's gross revenue. As a result, Doane's qualifying gross revenues are to be calculated only on the basis of his farming revenue, thereby rendering Doane eligible to benefits under the Act.

Because we find the Secretary's interpretation of this statute unreasonable and arbitrary, we REVERSE the decision of the district court and REMAND this case to the district court with orders to enter judgment for Doane consistent with this opinion.