INDIANA PHARMACISTS ASSOCIATION, Austin Pharmacy, Inc., and Wells Yeager Best, Co., Inc., Plaintiffs,

v.

INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION; Cheryl Sullivan, as Secretary of the Indiana Family and Social Services Administration; Indiana Office of Medicaid Policy and Planning; and James M. Verdier, as Assistant Secretary and Director of the Indiana Office of Medicaid Policy and Planning, Defendants.

No. IP 94–328 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 13, 1994.

Richard W. McMinn, Hall, Render, Killiam, Heath & Lyman, Indianapolis, IN, for plaintiffs.

Beth H. Henkel, Deputy Atty. Gen., Jill E. Zengler, Asst. U.S. Atty., Indianapolis, IN, for defendants.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

This matter is before the Court on Plaintiffs' motion for summary judgment. For the reasons stated below, Plaintiffs' motion is granted insofar as it requests injunctive and declaratory relief. However, the issues of class certification and damages remain to be decided and require further briefing.

## I. BACKGROUND

In this case the Court is asked to decide whether Indiana's Medicaid regulations gov-

erning recipient copayments for pharmacy services violate federal law. The Plaintiffs, the Indiana Pharmacists' Association and two for-profit pharmacies, claim that Ind.Code § 12–15–6 and 405 Ind. Admin. Code § 1–6–21.1 conflict with 42 U.S.C. § 1396r–8(e)(1) (the "Moratorium"), which places a moratorium on reductions in payment limits or dispensing fees for pharmacies that provide outpatient drugs to Medicaid recipients. Indiana's code provisions require a copayment from the Medicaid recipient of fifty cents for each multiple source (generic) drug dispensed and one dollar for each single source (brand name) drug dispensed. Federal law prohibits providers from refusing to furnish Medicaid services if a Medicaid recipient is unable to pay the copayment. *See* 42 C.F.R. § 447.15. Indiana's regulations make no provision, however, for providers to seek reimbursement from the State for recipients who do not make a copayment. The Plaintiffs claim that the copayment program contravenes the Moratorium by reducing the amount paid to a pharmacy without regard to the ability of the pharmacy to collect the copayment.

The Defendants (collectively the "State") assert that federal law explicitly allows the imposition of copayments and that the state rules do not conflict with the Moratorium. The State claims that the Moratorium merely prohibits reduction of payment limits with respect to the ingredient cost of covered outpatient drugs and reductions in dispensing fees for these drugs. The State further claims that Indiana's copayment plan does not reduce the payment limits or amounts which pharmacists are entitled to receive, but merely changes the composition of and relative liability for the actual payments.

Plaintiffs seek damages for the copayments they have not received under the Indiana program, attorneys' fees, and an injunction against the State law insofar as it does not comport with the federal Moratorium. Plaintiffs' Complaint contains class action allegations and seeks damages on behalf of the entire class of "Indiana pharmacies and pharmacists [who participate] in the Medicaid program" and who have supplied Medicaid beneficiaries with qualifying prescriptions but have not been wholly reimbursed by the copayment system; however, Plaintiffs have not filed a motion to certify the class and the issue of class certification has not yet been decided. *See* Fed.R.Civ.P. 23(c); S.D.Ind. LR 23.1.

## II. DISCUSSION

 Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf*, 870 F.2d at 1330.

 The first determination that must be made is whether the Moratorium clearly forbids the establishment of Indiana's copayment program; "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If the statute does not answer the "precise question at issue" the court then looks to the agency charged with administering the statute for guidance:

If, however, the court determines congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 843–44, 104 S.Ct. at 2782. In order for the court to find the agency's construction of the statute to be permissible, it must not be arbitrary, capricious, or manifestly contrary to the statute. *Id.* However, the construction may be permissible even if it is not one that the court would have reached on its own: "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* (citations omitted).[1]

The standard for finding that a statute is clear is a high one: Congress must have "directly addressed the precise question at issue." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. In the instant case, the precise question is whether a state is permitted, under the terms of the Moratorium, to transfer part of the reimbursement burden to Medicaid beneficiaries, even where the beneficiaries do not ever actually make the required copayments to the pharmacies. The Moratorium provides, in pertinent part:

(e) Treatment of Pharmacy Reimbursement Limits

(1) In general

During the period beginning on January 1, 1991, and ending on December 31, 1994—

(A) a State may not reduce the payment limits established by regulation under this subchapter. . . .

42 U.S.C. § 1396r–8(e)(1)(A).[2] Therefore, the question is whether Indiana's copayment plan amounts to a reduction in reimbursement limits for certain prescription drugs.

At least two district courts have faced this question and determined that the Moratorium on its face prohibits the implementation of a copayment plans. The court in *Nebraska Pharmacists Ass'n, Inc. v. Nebraska Dept. of Social Services,* 863 F.Supp. 1037, 1047 (D.Neb.1994), concluded that a copayment plan almost identical to the one implemented by Indiana violated the Moratorium because it "effectuate[d] a real reduction in pharmacy reimbursement limits." In analyzing the meaning of the Moratorium, the court explained:

Obviously, the statutory words prohibit the states from tinkering with the formulas used to calculate the reimbursement limits so as to reduce the amount of money pharmacists receive. It is also plainly evident that the statute prohibits the states from doing indirectly what cannot be done directly. That is, the statutory language prohibits the states from charging the pharmacists with the uncollectible cost of the copayments thereby effectively reducing the reimbursement limits just as surely as if the formulas had been tinkered with.

*Id.* at 1043. A New York copayment law was likewise found to be in violation of the plain language and meaning of the Moratorium. *Pharmaceutical Society of the State of New*

---

1. "When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail." *Chevron,* 467 U.S. at 866, 104 S.Ct. at 2793.

2. The Moratorium was originally located at 42 U.S.C. 1396r–8(f), and provided as follows:
(f) Pharmacy reimbursements
(1) No reductions in reimbursement limits
(A) During the period of time beginning on January 1, 1991, and ending on December 31, 1994, the Secretary may not modify by regulation the formula used to determine reimbursement limits described in the regulations under 42 C.F.R. 447.334 . . . to reduce such limits for covered outpatient drugs.
(B) During the period of time described in subparagraph (A) any State that was in compliance with the regulations described in subparagraph (A) may not reduce the limits for covered outpatient drugs described in subparagraph (A) or dispensing fees for such drugs. However, the amendments made only technical changes.

*York v. New York State Dept. of Social Services,* No. 93–CV–1208, 1994 WL 33369 *6 (N.D.N.Y. Jan. 18, 1994) ("[t]he copayment, which is effectively a reduction of reimbursement, therefore violates the . . . [M]oratorium").

The only other district court to have addressed this issue, the Northern District of Florida, also appears to have found the statute to be clear—but clear in that the Moratorium does *not* preclude the implementation of a copayment plan:

> A co-payment simply means that the Medicaid recipient pays a part of the cost of the drugs. Thus, it does not change how much reimbursement pharmacists receive; they are still entitled to the same amount of reimbursement as before. The pharmacists, however, now have two sources of reimbursement. Whether one of the sources, the recipients, may not be so forthcoming with reimbursement does not change the fact that the reimbursement limits have not been changed by the copayment program. In so far as the Florida's co-payment program does not change the level of reimbursement to pharmacists, it is not in conflict with the [M]oratorium. . . .

*Florida Pharmacy Ass'n v. Williams,* 871 F.Supp. 1441, 1443 (N.D.Fla.1993). *Florida Pharmacy* does not even seem to acknowledge that pharmacists will inevitably receive a lower amount in reimbursement. *Florida Pharmacy* apparently interprets the reimbursement level to be a theoretical amount, established regardless of whether such reimbursement actually happens.

Although this Court finds the reasoning in *Nebraska Pharmacists* and *Pharmaceutical Society* to be much more persuasive than that of *Florida Pharmacy,* the different conclusions may be indicative of some ambiguity in the Moratorium. While the Moratorium clearly prohibits a decrease in "reimbursement level" it does not explicitly state how the copayment provision, 42 U.S.C. § 1396o(a), which predates the Moratorium, is to be affected. In such an instance, *Chev-*

*ron* directs the Court to examine the agency's construction of the statute. 467 U.S. at 843–44, 104 S.Ct. at 2782.

The Health Care Financing Administration ("HCFA") is the federal agency within the Department of Health and Human Services that is responsible for administering the Medicaid Act. HCFA has submitted an amicus curiae brief in the instant case, arguing that the Indiana copayment plan is not in violation of the Moratorium.[3] HCFA contends that the Indiana copayment program "does not change the amount to be reimbursed or paid to the pharmacist for the services rendered." Brief of Amicus Curiae at 7. HCFA "urges this Court to reach the same conclusion [as was reached in *Florida Pharmacy,*]" maintaining that "Congress did not intend for [the Moratorium] to supersede or repeal the copayment provision of 1396o." *Id.*

■ This Court must defer to HCFA's interpretation of the Moratorium so long as it is based upon a permissible reading of the statute. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782; *Pennington v. Didrickson,* 22 F.3d 1376, 1383 (7th Cir.1994), *cert. denied, sub nom. Doherty v. Pennington,* —— U.S. ——, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994). "Essentially, we inquire as to whether the [agency's] interpretation and application of the [statute] is reasonable." *Doane v. Espy,* 26 F.3d 783, 786 (7th Cir.1994). This standard, however, is by no means a mandate for accepting HCFA's interpretation: "we have never interpreted this principle as a direction to approach our review of all government positions with a rubber stamp." *Pennington,* 22 F.3d at 1383. It is not unheard of for an agency interpretation to fail to pass judicial muster. *See, e.g., Doane,* 26 F.3d 783; *Madison Gas & Elec. Co. v. U.S.E.P.A.,* 25 F.3d 526 (7th Cir.1994); *Bullwinkel v. F.A.A.,* 23 F.3d 167 (7th Cir.1994); *Pennington,* 22 F.3d 1376; *Monsanto Co. v. E.P.A.,* 19 F.3d 1201 (7th Cir.1994).

■ HCFA's interpretation of the Moratorium appears to be entirely the result of

---

**3.** The Amicus Curiae brief was actually submitted by the Secretary of Health and Human Ser-
vices on behalf of HCFA.

litigation; as such, it is entitled to less deference than a position formed in the standard course of the regulatory process. *Pennington*, 22 F.3d at 1383. Similarly, the Court must consider the fact that HCFA'a position is not embodied in formal regulations, but is a "more informal statement" that does "not necessarily reflect the deliberate focus of the entire agency on the issue of congressional intent." *Id.* (citations omitted).

█ Taking all of these factors into consideration, the Court must conclude that HCFA's interpretation is neither reasonable nor permissible. As was noted in *Nebraska Pharmacists,* the interpretation urged by HCFA requires nothing less than a complete contortion of the Moratorium:

> It is a perversion of the words of the statute to suggest, as Defendants do, that states may effectively reduce reimbursements limits to pharmacists so long as they do not alter the formula by which the limits are calculated. The word "limits" only has meaning in reference to what the "limits" pertain to, and the "limits" pertain to "reimbursements." It is therefore absurd to suggest that Congress intended to preserve abstract formulas but not preserve the level of reimbursement produced by application of those formulas.

> For a certain but unknown percentage of Medicaid claims submitted by pharmacists the "reimbursement limit" has effectively been reduced by the copayment obligation. It is undisputed that in a certain number of cases, the Medicaid recipient will not be able to pay the copayment, the pharmacy must provide the prescription nevertheless, and the copayment will be uncollectible. Thus, the so-called "reimbursement limits" are, in every real sense, reduced.

863 F.Supp. at 1043. The Moratorium is only effective for a limited period of time. By its own terms, it restricts the actions that the states can take during that time period. It is unreasonable to argue that the statutory scheme, which clearly prohibits states from lowering the reimbursement amounts to the pharmacists (during the relevant time period) allows Indiana to instead reduce the reimbursement limits to pharmacists by insisting that the pharmacists are "reimbursed" by copayments which the pharmacists are forbidden from demanding in exchange for the prescriptions and which are in many instances going to be absolutely uncollectible.

In *Doane,* 26 F.3d 783, the Seventh Circuit encountered a somewhat analogous argument of semantics being made by the Department of Agriculture (the "Secretary"). The Secretary sought to interpret a statute such that a farmer's "qualifying gross income" included the value of beans which the farmer only held in bailment. *Id.* at 785. The farmer, by the terms of the bailment, could do nothing to the beans but store them, and the farmer received no proceeds from the beans. *Id.* at 786. The Seventh Circuit found the Secretary's position to be unreasonable. *Id.* at 786–87. Because the reality of the situation was that the farmer received no income from the beans, it was found to be unreasonable to interpret the statute such that the value of the beans was included as "qualifying gross income." *Id.*

Similarly, in the instant case, the Court cannot ignore the reality that the pharmacists are not being actually reimbursed at the reimbursement levels. In fact, some pharmacists appear to be experiencing real reductions in reimbursement levels. The Moratorium precludes such reductions, and any reading of the Moratorium which allows such reductions is therefore unreasonable.

## III. CONCLUSION

█ For the reasons stated above, Plaintiffs' motion for summary judgment as to declaratory and injunctive relief is hereby granted. Defendants are hereby enjoined from enforcing the copayment program between now and December 31, 1994 (when the Moratorium expires) to the extent that it results in reimbursement less than that referenced in the Moratorium.

The issues of class certification and damages for the named Plaintiffs remain. The Clerk is hereby instructed to schedule a conference with the parties and Magistrate Judge V. Sue Shields to review the remain-

ing issues and, where necessary, establish a briefing schedule.

It is so ORDERED.