**JAMES L. McGUIRE and the TAFUNA RESIDENTS ASSOCIATION, Petitioners/Appellants,**

**v.**

**ZONING BOARD, GOVERNMENT OF AMERICAN SAMOA, Respondent/Appellee.**

High Court of American Samoa
Appellate Division

AP No. 19-98

May 14, 1999

15

Before KRUSE, Chief Justice, RICHMOND, Associate Justice, TUA`OLO, Chief Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Appellants, Reginald E. Gates
        For Appellee, Marie A. Lafaele, Assistant Attorney General

### ORDER DENYING MOTION TO DISMISS AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

In this action, appellants James L. McGuire ("McGuire") and the Tafuna Residents Association ("TRA") seek judicial review of a variance granted by appellee Zoning Board ("the Board"), an administrative branch of the American Samoa Government.

On December 1, 1998, the Board filed a motion to dismiss and alternative motion for partial summary judgment, alleging that 1) TRA had failed to exhaust administrative remedies and 2) both McGuire and TRA lacked standing to challenge the Board's ruling. A hearing was held in this matter on February 9, 1999, with all counsel present.

## Facts

On March 5, 1998, Aotearoa Hong submitted to the Board a zoning variance application for the construction of a single-story, 7,200-square foot commercial warehouse in Tafuna. *See* Document No. 29[1]. A hearing was held on the application on April 9, 1998, at which McGuire appeared and submitted a letter in opposition to the variance. *See* Document Nos. 22, 23 and 25. The Board held a "Special Hearing" on May 22, 1998, and rendered its decision granting the variance that same day. *See* Document Nos. 12 and 13. The decision was received by McGuire a week later, and on June 8, 1998, he made an official written request for reconsideration.[2] *See* Document No. 9.

The initial reconsideration hearing was scheduled for July 21, 1998, but discussion of the Aotearoa variance was postponed for lack of a quorum. *See* Document No. 7. McGuire submitted a letter on July 30, 1998, requesting a written copy of any decision, which he signed both in his personal capacity as "Resident in Tafuna" and as "Representative of Tafuna Residents Assoc." *See* Document No. 5. A quorum was present at the subsequent meetings of August 3 and August 19, 1998, and the Board heard the motion for reconsideration. *See* Document No. 4. The minutes of those meetings again reflect TRA's participation, with McGuire present as its representative. *Id.*

The Aotearoa variance was upheld by unanimous vote at the August 19 meeting, and written notice of that decision was provided by letter of September 2, 1999. *See* Document Nos. 1 and 4. In explaining its decision, the Board ultimately ruled that the warehouse "would not create an adverse impact." *See* Document No. 1. This suit, seeking judicial review of the final agency decision pursuant to A.S.C.A. § 4.1040(a), followed.

---

[1] All references to particular documents are as numbered in the November 30, 1998, memorandum from the Zoning Administrator, transmitting the record to this court.

[2] Pursuant to A.S.A.C. § 26.0320(h), a motion for reconsideration must be filed in writing within 10 days of the *receipt* of the Board's decision. Although not contested in this case, we note for the record that McGuire's motion was therefore timely filed.

## Discussion

### A. Exhaustion of Administrative Remedies

■ A.S.C.A. § 4.1040(a) explicitly restricts the right of judicial review to those individuals who have "exhausted all administrative remedies available within an agency." Among the remedies available to an individual aggrieved by a decision of the Zoning Board are an initial hearing and a procedure for reconsideration, which McGuire clearly invoked by his letter of June 8, 1998. *See* Document No. 9. Any dismissal for failure to exhaust administrative remedies, therefore, shall only apply to TRA.

In reviewing the record, we do find that TRA neglected to participate in the initial April 9 hearing or to join in McGuire's June 8 motion for reconsideration. The hearing minutes reference McGuire only as "another public member," and McGuire's letter requesting reconsideration appears to have been signed by him only his individual capacity, namely as "Real Estate Appraiser" and "Residing in Tafuna." *See* Document Nos. 9, 22 and 23.[3] On the other hand, as noted above, TRA did join McGuire's letter of July 30, 1998 and participated in the reconsideration hearing itself. *See* Document Nos. 4 and 5. Although TRA technically may not have exhausted its administrative remedies due to its failure to appear at the initial hearing—and clearly could not itself have moved for reconsideration for this reason—its subsequent participation persuades the court to allow it to remain as a party to this case.

■ As a general rule, the exhaustion requirement is an "intensely practical" doctrine which may be judicially excused when "the purposes of the requirement would not be served by requiring [rigid adherence]" to the rule. *Bowen v. New York,* 476 U.S. 467 (1986). *See generally* 2

---

[3] It is *possible* that McGuire introduced himself at the April 9 hearing as a representative of TRA, as well as a member of the public (appellants' petition for review, filed October 2, 1998, notes that "[p]etitioners [*plural*] appeared and testified at the April 9, 1998 public hearing," at ¶ 5); unfortunately, we can never know with certainty because the cassette tape containing the verbatim testimony at that hearing has been inadvertently erased. While it is true that nothing in the current law explicitly requires that such tapes be preserved, when a member of the public specifically requests that a tape be included in the record for subsequent judicial review—and is assured by the Board that it will be —it is extremely frustrating to this court to later find that tape unavailable. *See* Document No. 9. As it turns out, we find ourselves with sufficient information to rule on this motion, but hope that in the future such mishaps will be studiously avoided.

AM. JUR. 2D *Administrative Law* § 511—Particular circumstances under which exhaustion may not be required (1994 & Supp. 1998). The purposes of the exhaustion requirement have been identified by this court on prior occasion:

> [T]he doctrine . . . (1) insures against premature interruption of the administrative process; (2) allow[s] the agency to develop the necessary factual background on which to base a decision; (3) allow[s] exercise of agency expertise in its area; (4) provide[s] for a more efficient process; and (5) protect[s] the administrative agency's autonomy by allowing it to correct its own errors and insuring that individuals [are] not encouraged to ignore its procedures by resorting to the courts.

*McGuire v. Zoning Board,* 26 A.S.R.2d 59, 61 (Appellate Div. 1994), *quoting South Hollywood Hills Citizens v. King County,* 677 P.2d 114, 118 (Wash. 1984) (citing *McKart v. United States,* 395 U.S. 185 (1969)). The court went on to observe that, "[m]ost importantly, utilizing administrative procedures may eliminate the need for judicial review altogether." *Id.*

■ In the instant case, it's clear that the rationale underlying the exhaustion requirement would not be served by excluding TRA from this case. Judicial review is in no way premature: both the initial hearing and the reconsideration hearing have taken place, the Board has had every opportunity to review and reverse its decision as contemplated by A.S.A.C. § 26.0320, and a final decision has been rendered. Excluding TRA at this stage of the proceedings, when the matter is clearly ripe for judicial review, would serve no purpose whatsoever. Even if TRA did fail to exhaust administrative remedies, we find that, under these particular circumstances, exhaustion is properly excused.[4]

B. Standing

■ To determine whether a given individual or organization has standing to seek judicial review of a final administrative decision, this court has adopted the familiar two-part federal test: petitioners must demonstrate that they have (a) suffered an "injury in fact" and (b) are arguably within the statute's "zone of interests." *Le Vaomatua v. American Samoa*

---

[4] In this case, where only injunctive relief is sought, and where both appellants independently satisfy the standing requirement (as discussed below), TRA's continued participation would appear to be largely symbolic. We can conceive of a situation in which this would not be the case, however, and we obviously leave it to future courts to decide whether the exhaustion requirement should be excused under whatever particular circumstances may confront them at that time.

*Government,* 23 A.S.R.2d 11, 13 (citing *United States·v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 686 (1973); *Sierra Club v. Morton,* 405 U.S. 727, 733 (1972); *California by Brown v. Watt,* 683 F.2d 1253, 1270 (9th Cir. 1982) (citing *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 151-53 (1970); *Barlow v. Collins,* 397 U.S. 159 (1970); *Glacier Park Foundation v. Watt,* 663 F.2d 882, 885 (9th Cir. 1981)).

## 1. Injury in Fact

■ We note at the outset that the injury in fact requirement is an extremely minimal one; indeed, an "identifiable trifle" will suffice. *United States v. SCRAP,* 412 U.S. 669, n.14 (quoting Davis, 35 U. CHI. L. REV. 601, 613). In this regard, the critical inquiry is not the magnitude of the alleged injury, but simply whether an injury can be identified and whether the party seeking review is actually among the injured. *Id.* at 687.

■ In its brief, the Board states that "the petition seeking judicial review does not contain any allegation supporting injury in fact to any member of TRA or to the petitioner, McGuire." *See* Appellee's Memorandum of Points and Authorities, filed December 1, 1998, at 8. We disagree. In fact, the petition itself contains several allegations of injuries which would be suffered by both McGuire and members of the TRA, including, *inter alia,* the drain on a limited water supply and the threat to pedestrian traffic. *See* Petition for Review, filed October 2, 1998, at ¶¶ 20-21. In our opinion, each of these would independently satisfy the injury in fact requirement.

Moreover, the Board cites no authority for the proposition that standing must be based solely upon facts which are alleged in the petition itself. If we look to the entirety of the record (or simply incorporate much of the record by way of reference in the petition), additional alleged injuries may be identified, such as the potential strain on sewage, fire protection, garbage collection, power, telephone and other services. *See, e.g.,* Document No. 9. These alleged injuries undeniably demonstrate more than a "mere interest" in the issue, and the injury in fact portion of the standing test is thereby met.[5] *Stow v. United States,* 696 F.Supp 857,

_____

[5] In its brief, the Board argues that so-called "procedural violations" usually cannot constitute injuries in fact. *See* Appellee's Memorandum of Points and Authorities, at 8-9. As discussed above, we find sufficient non-procedural injuries in this case to meet the injury requirement; however, we note in passing that one *can* enforce procedural rights "so long as the procedures in question are designed to protect some threatened concrete interest of the person's that is the ultimate basis of the person's standing." 2 AM. JUR. 2D *Administrative Law* § 449—

862 (W.D.N.Y. 1988) (standing was conferred when property owners residing below a proposed dam alleged injuries in fact including a drain on their water supply, risk of physical injury should the dam break, increased noise and air pollution, and damage to the "aesthetics of the surrounding area").[6]

## 2. Zone of Interests

■ The second component of the standing test requires that appellants' alleged injuries in fact fall within the "zone of interests" which the statute or regulation seeks to protect, an issue of legislative intent. *Clarke v. Securities Industry Assn.,* 479 U.S. 388 (1987). It is manifestly clear that zoning statutes and regulations are designed to protect the rights of neighboring land owners. Those statutes provide, for example, that a variance be granted only when it "would not be injurious to the neighborhood." A.S.C.A. § 26.0340(a).

■ As residents of the neighborhood for which a variance is sought, appellants' alleged injuries fall squarely within the zone of interests which those statutes seek to protect. Having alleged injuries in fact which are within the statutes' zone of interests, McGuire and TRA have therefore properly established standing to bring this action

### Order

For the foregoing reasons, the Board's motion to dismiss and alternative motion for partial summary judgment are denied.

It is so ordered.

---

Procedural Injury based on statutory right (1994 & Supp. 1998).

[6] We note also that McGuire, at least, further alleges potential *economic* injury. *See*, e.g., Document No. 25 (the variance would "diminish the value of my home"). While economic injuries are not necessary to confer standing, they are nearly always sufficient for that purpose, even if the economic injury alleged is "minuscule." *National Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689, 693 (D.C. Cir. 1971).